(May 13, 1911.)

CITY OF NAMPA, a Municipal Corporation, et al., Appellants, v. NAMPA & MERIDIAN IRRIGATION DISTRICT, a Corporation, Respondent.

[115 Pac. 979.]

Waters—Rights of Users—Municipal Corporations—Control Over Streets—Injury to Corporate Property—Duty of Reconstruction—Irrigation Districts—Apportionment of Expense and Improvement.

(Syllabus by the court.)

1. Lot owners in a city who have become entitled to the use of water from an irrigation system cannot be compelled to pay for the company's system, nor can they be denied water for the reason that its delivery has been made more expensive or more burdensome to the company.

2. Under sec. 2238, Rev. Codes, subd. 3, authorizing cities and villages to establish grades on streets and alleys, and sec. 2315, Rev. Codes, as amended by Laws of 1909, p. 174, conferring authority upon cities and towns to issue bonds for the grading, paving, construction and laying out of streets and alleys, cities and villages have ample power to establish the grade of their streets and to reconstruct the roadbed on the grade thus established.

3. The destruction of an irrigation ditch by a city in lawfully changing the grade of its streets is not a destruction of the ditch owner's easement or right of way in the streets.

4.    A grant to a canal company of a right of way or easement for its ditches in the streets of a city is subject to the right of the city to thereafter regulate the manner of the exercise of such easement, or to change the grade of the streets in such a way as to require a corresponding change in the conduit for the delivery of water; and in exercising its right to grade its streets, the city may, if it becomes necessary so to do, remove such ditches and require the reconstruction of the company's system by a pipe-line beneath the surface.

5.    An irrigation district is a public *quasi* corporation organized to conduct business for the private benefit of the owners of lands within its limits, and holds its property in a proprietary rather than in a governmental capacity, so that it must assume and bear the burdens of proprietary ownership.

6.    Under sec. 2419, Rev. Codes, which authorizes the directors of irrigation districts to fix rates of tolls and charges for water against persons using its canals, or to levy assessments for the purpose of defraying expenses of the operation, "repair and improvement" of such portion of its canal and works as are complete and in use, the laying of a pipe-line necessitated by the lawful removal of a ditch by municipal authorities is a repair or improvement, the funds for defraying which may be included in a maintenance assessment or in increased toll rates charged for the delivery of water, and is not new construction which must be defrayed by a special assessment under sec. 2391, or bond issue under sec. 2396, which require the assent of the voters of the district.

APPEAL from the District Court of the Seventh Judicial District, for Canyon County.    Hon. Ed. L. Bryan, Judge.

Application for writ of mandate.    Judgment of dismissal was entered after sustaining a demurrer to the complaint, and the plaintiffs appealed.    *Reversed.*

G. W. Lamson, for Appellants.

The water users on the city lots acquired vested water rights, and it is the duty of the defendant corporation to deliver water.    (*Wilterding v. Green*, 4 Ida. 773, 45 Pac. 134; *People ex rel. Standart v. Farmers' High-Line Canal and Reservoir Co.*, 25 Colo. 202, 54 Pac. 626.)

It is evident that the city of Nampa acted within its rights. "A licensee of an easement upon a street or highway for a public use takes such easement subject to the continuing

power of the corporation to grade and improve its highways. (3 Abbott, p. 2110, and authorities cited.)

The water users cannot be compelled to pay for any part of the district water system, and the laterals destroyed are a part of the system. (*Bothwell v. Consumers Co., Ltd.,* 13 Ida. 568, 92 Pac. 533, 24 L. R. A., N. S., 485; *Wilterding v. Green,* 4 Ida. 773, 45 Pac. 134.)

The authorities adjudicate cases wherein the question lies exclusively between the licensor and the licensee of the easement. (*Allen v. San Jose,* 92 Cal. 138, 28 Pac. 215, 15 L. R. A. 93; *Barrows v. Fox,* 98 Cal. 67, 32 Pac. 811; *Gregory v. Nelson,* 41 Cal. 278.)   The case at bar is one in which the water users, among whom are some of the plaintiffs, are injured, and they have no interest whatever in the easement or the controversy as to what changes have been made in the lateral ditches.   By usage for more than ten years, these parties have acquired vested rights, which in equity should be protected.   There is every presumption that the defendant contemplated just such changes as have taken place and contracted accordingly.

McElroy & Winstead, for Respondent.

The construction by respondent in the streets of Nampa of an irrigation system, consisting of "proper tiling or cast pipe," is the original construction of irrigation works not heretofore in existence and different in character from that in which plaintiffs secured an easement for the carriage of their water.   (*Allen v. San Jose Land & Water Co.,* 92 Cal. 138, 28 Pac. 215, 15 L. R. A. 93.)

"Ditches and flumes are the usual and ordinary means of diverting water in this state, and parties who have made their appropriations by such means cannot be compelled to substitute iron pipes, though they may be compelled to keep their ditches and flumes in good repair so as to prevent any unnecessary waste."   (*Barrows v. Fox,* 98 Cal. 66, 32 Pac. 811; *Winslow v. City of Vallejo,* 148 Cal. 723, 113 Am. St. 349, 84 Pac. 191, 5 L. R. A., N. S., 851, 7 Ann. Cas. 851.)

The law clearly provides for the establishment of uniform charges for water, and ''an irrigation company appropriating water for sale has no authority to make a distinction between its consumers.'' (*Boise City Irr. & Land Co. v. Clark*, 131 Fed. 415, 65 C. C. A. 399.)

Rice, Thompson & Buckner, *Amici Curiae*.

Under the pleading in this case, the Nampa-Meridian Irrigation District had a right to said easement and right of way that the city of Nampa must respect. Said lateral constructed on said easement and right of way was the property of the irrigation district, and said city had no more right to destroy that lateral than if it had been constructed on an easement and right of way through lands owned by private parties. The lateral had been constructed and was being used for a lawful purpose. The city had no authority to declare the same a nuisance and destroy it. A lateral to carry water for irrigation purposes is not a nuisance *per se*. (*Melker v. City of New York*, 190 N. Y. 481, 83 N. E. 565, 16 L. R. A., N. S., 621, 13 Ann. Cas. 544; 29 Cyc. 1153.)

Since such a lateral is not a nuisance *per se*, before it can be lawfully destroyed, it is absolutely necessary that an action be brought and that it be judicially determined a nuisance. Until it has been so declared a nuisance by judicial determination, no one has authority to destroy the same. (*Yates v. City of Milwaukee*, 77 U. S. 497, 19 L. ed. 984; *City of Denver v. Mullen*, 7 Colo. 345, 3 Pac. 693.)

MacLANE, District Judge.—In 1895 the village, now city, of Nampa granted the Boise City Irrigation & Land Co. an easement and right of way for the construction of lateral ditches to convey water for irrigation purposes upon certain of its streets. The company accepted this grant, constructed its ditches and supplied water to lot owners in the village, and its rights and franchises, whatever they were, were subsequently acquired by the Nampa & Meridian Irrigation District, the defendant in this action. In 1909, the city of

Nampa established a grade for the streets along which these ditches ran, lower than the existing grade of the ditches, and constructed a new roadway according to the grade thus established. In doing this work, it tore out and destroyed the defendant's ditches, and has served notice upon the defendant requiring it to reconstruct the ditches beneath the surface of the streets by means of tiling or cast pipe. The defendant failed to comply with this notice, and this action is brought by the city and certain lot owners who were formerly served by the defendant's ditches, to compel the defendant to install a pipe system along the streets and to deliver water to those entitled thereto. A demurrer to a complaint alleging the foregoing facts was sustained by the trial court and a judgment of dismissal entered, from which the plaintiffs have appealed.

The complaint alleges that the lot owners have been supplied with water from the defendant's system for several years preceding the commencement of the action; that their lands have been improved by the water so supplied, and that such lands cannot be irrigated from any other system. Under these facts the lot owners have become entitled to the use of water from the defendant's system and the defendant must, in the first instance, construct its system within its franchise limits at its own expense. It cannot compel the user of water to pay for any part of the system. (*Pocatello Water Co. v. Standley*, 7 Ida. 155, 61 Pac. 518.) The fact that the delivery of water has been made more expensive or more burdensome to the defendant is not a sufficient reason for refusing to deliver the water. (*Niday v. Barker*, 16 Ida. 73, 101 Pac. 254.)

These lot owners are therefore entitled to the water which they have demanded, unless the acts of the city constitute a justification or excuse for the failure of the defendant to deliver it. There is no contention that they in any way participated in the destruction of the defendant's ditches by the city, and it seems that their right to the water could not be defeated by any act of the city, even if wrongful, in which they did not join, regardless of whether or not the defendant

would have a remedy over against the city for the destruction of its property. That is a question which would seem to concern only the city and the defendant.

However that may be, the principal question argued, and which it is desired to have determined, is whether the duty of reconstruction rests upon the city or upon the defendant. By sec. 2238, Rev. Codes, subd. 3, cities and villages are authorized to "establish, lay out, alter, open any streets or alleys, and improve, repair, light, grade or sprinkle, drain the same and remove any and all obstructions therefrom, establish grades and construct bridges, cross-walks, culverts and sewers thereon, and repair and maintain the same; . . . . and defray the expenses of the same out of the general fund of such city or village . . . . (or) by a special assessment in accordance with the provisions of the fifth subdivision of this section." The subdivision referred to provides the method of levying such special assessment.

Sec. 2315, as amended by Laws of 1909, p. 174, confers authority to issue bonds to "provide for the grading, paving, construction and laying out of streets and alleys." Under these sections cities and villages have ample power to establish the grade of their streets, and to reconstruct the roadbed of the streets on the grade thus established, and it is generally held that for damages incidentally resulting to abutting property from the lawful exercise of the power so conferred, they are not liable to the owner in the absence of a statute expressly imposing such liability. (28 Cyc., Municipal Corporations, 1069; *Smith v. City of Washington,* 61 U. S. 135, 15 L. ed. 858; *City of Denver v. Vernia,* 8 Colo. 399, 8 Pac. 656; *Roberts v. City of Chicago,* 26 Ill. 249; *City of Pontiac v. Carter,* 32 Mich. 164; *Shattner v. Kansas City,* 53 Mo. 162.)

It is contended here that as the plaintiff city granted the defendant's predecessor in interest, the Boise City Irrigation & Land Co., an easement and right of way for the construction of these ditches, which was accepted by that company by the construction of its ditches and the use and operation of the same, that the defendant, on succeeding to the interest

of the Boise City Irrigation & Land Co., acquired a property right in its ditches which the city could not destroy. The contention begs the real question at issue. There was a destruction of the ditches but there was no destruction of the easement or right of way which was granted; that still exists, and the city is endeavoring to compel the defendant to use it in a different manner than that in which it was first exercised, namely, by the laying of pipes instead of by the original open ditch. The grantee of that easement, the Boise City Irrigation & Land Co., is a private corporation, organized— at least the record shows nothing to the contrary—for profit. Whatever right it took by virtue of the alleged grant or easement, was subject to the right of the city to thereafter regulate the manner of its exercise, or to change the grade of its streets in such way as to require a corresponding change in the conduit for the delivery of water. Thus, in a case where a water company located its gates through which private service was made near the edge of the existing sidewalk, and the city afterward widened its sidewalk and required the water company to move its gates and place them outside of the new curbing, it was said:

"When the company placed its gates in the streets of the city under the contract referred to, it did so subject to the right of the city to make such changes in the surface of the street and the alignment of the sidewalk as might be necessary to render the street safe and convenient for public travel. In making needed repairs and changes in the streets, the city is but an instrument of the state, an agent of the public, and it cannot barter away its rights or fetter its duty to make such repairs and changes. To subject itself to the expense of changing the appliances of the water company in the streets whenever it became necessary to change them, by reason of repairs, would be a serious impairment of its rights, and an onerous addition to its duties." (*Belfast Water Co. v. City of Belfast*, 92 Me. 52, 42 Atl. 235.)

In *National Water Works v. City of Kansas*, 23 Fed. 921, it was held that a water company in laying its pipes in the

streets of the city did so subject to the right of the city afterward to construct sewers wherever in its judgment the public necessity demanded, and that it had no cause of action for being compelled to relay its pipes in consequence of the exercise of such paramount right of the city.

In a recent case it is said:

"While municipalities may by ordinance grant to individuals and corporations the privilege of occupying the streets and public ways for lawful purposes, such as railroad tracks, poles, wires, gas and water pipes, such rights are at all times held in subordination to the superior rights of the public, and all necessary and desirable police ordinances that are reasonable may be enacted and enforced to protect the public health, safety and convenience, notwithstanding the same may interfere with legal franchise rights. A water company placing its pipes in the streets under a franchise contract with the city, does so in subordination to the superior rights of the public through its duly constituted municipal authorities to construct sewers in the same streets whenever and wherever the public interest demands; and if in consequence of the exercise of this right the water company is compelled to relay its pipes, in the absence of unreasonable or malicious conduct, it has no cause of action against the corporation for reimbursement on account thereof."

It was consequently held that the cost of removing and relaying the water pipes, conduits and the like interfered with in the laying of sewers, could not be assumed by the city in the contract for the construction of its sewers. (*Anderson v. Fuller*, 51 Fla. 380, 120 Am. St. 170, 41 So. 684, 6 L. R. A., N. S., 1026.)

The supreme court of the United States has held that the imposition upon a gas company of the cost of changes in the location of its pipes and mains necessitated by the construction of a branch system does not impair its contract rights acquired under an exclusive franchise to supply gas to the city, and that the gas company has no such property rights in the location of its pipes and mains as to make the imposition upon it of such cost a taking of property without compensa-

tion. (*New Orleans Gas Light Co. v. Drainage Commission,* 197 U. S. 453, 25 Sup. Ct. 471, 49 L. ed. 831.)

Similarly, it is quite uniformly held that a change of grade in the streets does not make the city liable for the cost of necessary changes in pipe-lines laid in a street under franchise from the city. (*Scranton Gas & Water Co. v. City of Scranton,* 214 Pa. 586, 64 Atl. 84, 6 L. R. A., N. S., 1033, 6 Ann. Cas. 388; *Stillwater Co. v. Stillwater,* 50 Minn. 498, 52 N. W. 893; *Columbus Gas Light Co. v. Columbus,* 50 Ohio St. 65, 40 Am. St. 648, 33 N. E. 292, 19 L. R. A. 510. See, also, note, 6 L. R. A., N. S., 1026.)

This case seems to us clearly analogous to the cases which we have cited, and they would be decisive of the question raised in a suit between the city and the Boise City Irrigation & Land Co. The question arises: Does the defendant, as an irrigation district, stand in any different situation from its predecessor? We think not. An irrigation district is a public *quasi* corporation, organized, however, to conduct a business for the private benefit of the owners of land within its limits. They are the members of the corporation, control its affairs, and they alone are benefited by its operations. It is, in the administration of its business, the owner of its system in a proprietary rather than a public capacity, and must assume and bear the burdens of proprietary ownership. In the case at bar it has simply purchased the system of the Boise City Irrigation & Land Co., and it acquired in the streets of the city of Nampa only such rights as its predecessor had. The control of the city streets, as this court has often held, rests solely in the city, and no other public corporation, or *quasi* corporation, can be permitted to limit such control, or to burden its exercise, by requiring the city to replace its property when a change in its location is necessitated by the lawful exercise of the power of the city over its streets.

It is alleged in the complaint that the defendant's ditches, if reconstructed upon the surface, would be a nuisance forbidden by the city. This, of course, is not a proper method of alleging that a surface ditch is a nuisance in a particular

locality, but the question of nuisance is not properly in the case, as it is further stated that the ditches cannot be constructed upon the grade as now established, for the reason that such grade is lower than the grade of the lots irrigated from the ditches. Under these circumstances, it is clear that the defendant, even though its ditches would not be a nuisance in fact, cannot reconstruct its system upon the surface by means of ditches, but must do so by means of pipes beneath the surface. While this imposes an added burden upon the defendant, yet it follows from what has been said earlier in the opinion, that this burden is one which the defendant must assume when its assumption results from a lawful exercise by the city of its authority in the grading of its streets. It is *damnum absque injuria.*

Finally, it is contended by the defendant that it has no funds or means of raising funds for the purpose of constructing ditches under the plaintiff's streets; that such construction must be paid for from the construction fund of the district, as it is in the nature of new work and not a repair of the existing system, and that as that fund has been exhausted, no additional fund for that purpose can be raised except by an issue of bonds, which requires the assent of the voters of the district.

The law governing irrigation districts is found in title 14 of the Political Code. It appears from an examination of the provisions of this title that the cost of the purchase of irrigation works, or of the construction of new works, must be paid from the construction fund of the district, which is raised either by a bond issue under section 2396, by the levy of a special assessment under section 2391, or by the levy of an assessment in lieu of canceled bonds under section 2404. As a prerequisite to either of these modes of raising money, it is necessary that the assessment or bond issue be authorized by a two-thirds vote of the electors of the district, although in case of assessments in lieu of bonds, the authorization of the bond issue carries with it the power in the directors to substitute the assessment for the bonds without a further vote. By section 2399, the cost of such

purchase or construction is apportioned according to benefits
to the lands in the district, and all future purchase or con-
struction cost, which is defrayed by special assessment or
bond issue, must be apportioned in the same manner; that is,
the assessment of benefits when once made remains fixed and
continues the basis for spreading future assessments. If,
then, the work of laying pipes in lieu of ditches is to be
regarded as new construction, it would have to be paid for
from a bond issue or a special assessment, as a prerequisite
to which the authorization of the electors of the district
would be necessary, and the defendant could not be required
to lay these pipes unless previously authorized by the electors
to raise the money. But, by section 2419 of the codes, it
is provided: "For the purpose of defraying the expenses of
the organization of the district, and of the care, operation,
management, repair and improvement of such portion of said
canal and works as are completed and in use, including
salaries of officers and employees, the board may either fix
rates of tolls and charges for water against all persons using
said canal for irrigation or other purposes, or they may levy
assessments therefor or by both such tolls and assessments.
. . . . All assessments and tolls shall be listed and carried
out in the regular assessment-book and collected by the treas-
urer at the time and in the manner of the regular annual
assessment. All special assessments are a lien on the lands
assessed from the time when they are ordered." The levy
of these tolls and assessments is within the control of the
directors, and does not depend for its exercise upon the will
of the electors of the district. It appears from this section,
when construed in connection with the other sections of the
law which we have cited, that the construction fund realized
from the proceeds of bonds and assessments is to be used only
for the construction of the system as originally contemplated,
or for extensions not involved in the original plan of the
work; but for maintenance or "repair and improvement of
such portion of said canal and works as are completed and
in use" a maintenance fund is provided, and from that fund
these expenses are to be defrayed. The laying of a pipe-line

necessitated by the lawful removal of a ditch by municipal authorities is a repair or improvement within the meaning of this section, and the funds for this purpose may be included in an annual assessment, or in the toll rates charged for the delivery of water. The assessment, under section 2419, would be charged against all the lands in the district in proportion to the original apportionment of benefits; if the directors decide to resort to tolls instead of to an assessment to meet these expenses, all the tolls in the district will necessarily be proportionately increased.

It is unfortunate that lands not directly benefited by this improvement in the defendant's system should be required to bear any part of the cost of the improvement. The case demonstrates the inapplicability of the irrigation district law to lands within cities and towns. But it has been held in *Nampa & Meridian Irr. Dist. v. Brose,* 11 Ida. 474, 83 Pac. 499, that lots and lands within a city or village may be included in an irrigation district if they will be benefited thereby, and where such lands are included within the district, the owners thereof are entitled to enforce their rights against the district under the law as it stands, regardless of what that law ought to be.

The judgment will be *reversed,* with costs to appellants.

Ailshie, Presiding J., and Sullivan, J., concur.