(November 15, 1911.)

## PIONEER IRRIGATION DISTRICT, Respondent, v. J. P. WALKER, Appellant.

[119 Pac. 304.]

IRRIGATION DISTRICTS—ELECTIONS—QUALIFICATION OF VOTERS—RESIDENCE—PROPERTY OWNERSHIP—CONSTITUTIONAL LAW.

(Syllabus by the court.)

1. Irrigation districts organized under the laws of the state are *quasi*-municipal corporations and are governed by the general election laws of the state; and the qualifications prescribed by the

constitution for voters at elections apply to an election held in an irrigation district.

2. Sec. 1, art. 6, of the constitution, which provides for a secret ballot, is applicable to elections held in an irrigation district, under the laws of the state.

3. Sec. 2, art. 6, of the constitution provides, "Every male or female citizen of the United States, twenty-one years old, who has actually resided in this state or territory for six months, and in the county where he or she offers to vote, thirty days next preceding the day of election, if registered as provided by law, is a qualified elector."

4. Sec. 20, art. 1, of the constitution provides that, "No property qualification shall ever be required for any person to vote or hold office, except in school elections or elections creating indebtedness."

5. Sec. 4, art. 6, of the constitution provides, "The legislature may prescribe qualifications, limitations and conditions for the right of suffrage additional to those prescribed in this article, but shall never annul any of the provisions in this article contained."

6. Sec. 1, art. 6, of the constitution, provides, "All elections by the people must be by ballot. An absolutely secret ballot is hereby guaranteed, and it shall be the duty of the legislature to enact such laws as shall carry this section into effect."

7. Sec. 2 of the act of March 6, 1911, in prescribing residence within the state as sufficient to qualify a voter at an election within the district is in violation of sec. 2, art. 6, of the constitution.

8. Sec. 2 of the act of March 6, 1911 (Sess. Laws, p. 461), wherein it is provided that a holder of land within the district who is a resident of the state is a qualified voter at an election held in the irrigation district, violates the provisions of sec. 2, art. 6, of the constitution.

9. Sec. 2 of said act of March 6, 1911, also violates the provisions of sec. 1, art. 6, of the constitution, in that it provides that each voter may vote and have his ballot marked according to acreage of land owned by him and according to the number of inches of water used by him within the district.

APPEAL from the District Court of the Seventh Judicial District for Canyon County. Hon. Ed. L. Bryan, Judge.

Action on an agreed statement of facts for the purpose of testing the constitutionality of sections 1, 2, 3 and 4 of an act of the legislature approved March 6, 1911. Judgment holding said sections unconstitutional. *Affirmed.*

Smith & Scatterday, for Appellant.

An irrigation district is a public corporation in one sense of the word, but it is not such a public corporation as would render unconstitutional the statute in question, by reason of the method of voting, and the qualifications of the electors provided for therein. The constitutional restrictions in this regard apply only to municipal corporations constituting the subdivisions of the state government, such as counties, cities, towns and villages, and not to public corporations such as reclamation projects, irrigation districts and drainage districts, whose primary object is to benefit the property of private owners and not to exercise governmental functions. In so far as some of the functions of an irrigation district are concerned, it is a public corporation, but as to others it should be treated as a private corporation. (*Merchants' Nat. Bank v. Escondido Irr. Dist.*, 144 Cal. 329, 77 Pac. 937; *Mound City Land & Stock Co. v. Miller*, 170 Mo. 240, 94 Am. St. 727, 70 S. W. 721, 60 L. R. A. 190.)

Rice, Thompson & Buckner, for Respondent.

An irrigation district, organized under the irrigation district laws of this state, is a public corporation, and the legislature in enacting laws in reference to such districts is limited by the provisions of the constitution of this state. (*In re Bonds of Madera Irr. Dist.*, 92 Cal. 296, 27 Am. St. 106, 28 Pac. 272, 14 L. R. A. 755; *People v. Selma Irr. Dist.*, 98 Cal. 206, 32 Pac. 1047; *Fallbrook Irr. Dist. v. Bradley*, 164 U. S. 112, 17 Sup. Ct. 56, 41 L. ed. 369; *Jenison v. Redfield*, 149 Cal. 500, 87 Pac. 62; *Hertle v. Ball*, 9 Ida. 193, 72 Pac. 953.)

Nearly all of the functions of an irrigation district are public in nature. (*Merchants' Nat. Bank v. Escondido Irr. Dist.*, 144 Cal. 329, 77 Pac. 937.)

Hugh E. McElroy, *Amicus Curiae.*

In case of *People v. Nelson*, 133 Ill. 565, 27 N. E. 217, the court held that a sanitary district was governed by the provi-

sions of the constitution of that state relating to suffrage and elections. It is also held that the legislature cannot add to or change constitutional qualifications. (See authorities cited under note 4, p. 576, 10 Am. & Eng. Ency. Law, 2d ed.)

Actual residence within the district is required by the constitution as a necessary qualification for suffrage in district elections. (Cooley, Const. Limitations, p. 902.)

The constitution does not permit a plurality of votes to be cast by a single elector, the number thereof to correspond to the amount of property he owns, of some given class or character. (*Maynard v. Board of District Canvassers,* 84 Mich. 228, 47 N. W. 756, 11 L. R. A. 332.)

Richards & Haga, *Amici Curiae.*

Under the provisions of sec. 20, art. 1, of the constitution, no property qualifications can ever be required of any person to vote or hold office, except in school elections or elections creating indebtedness. The present case is not embraced in either exception. (*Allison v. Blake,* 57 N. J. L. 6, 29 Atl. 417, 25 L. R. A. 480; *Livesley v. Litchfield,* 47 Or. 247, 114 Am. St. 920, 83 Pac. 142; *Wiggin v. City of Lewiston,* 8 Ida. 527, 69 Pac. 286.)

The legislature cannot enlarge the elective franchise. (*Johnson v. Grand Forks County,* 16 N. D. 363, 125 Am. St. 662, 113 N. W. 1071; *Morris v. Powell,* 125 Ind. 281, 25 N. E. 221, 9 L. R. A. 326.)

The constitution of this state, sec. 1, art. 6, guarantees to the electors "an absolutely secret ballot." (*McGrane v. County of Nez Perce,* 18 Ida. 714, 112 Pac. 312.)

STEWART, C. J.—This case was submitted to the district court of Canyon county upon an agreed statement of facts. It appears from the agreed statement of facts that application was made to the Pioneer Irrigation District, praying that certain lands should be annexed to said district; that notice was given as provided by law and a hearing had upon the petition for annexation, and the board made an order that an election should be held to determine whether the

boundaries of the district should be changed so as to include the lands described in the petition. The question arose with the board whether the election should be held under the provisions of sec. 2379, Rev. Codes, as amended by an act approved March 6, 1911, and whether sections 1, 2, 3 and 4 of said act are constitutional or whether the election should be held under the provisions of sec. 2379 before amendment.

Upon this statement of facts there was submitted to the district court the following questions:

1. Shall said board of directors of said irrigation district, in calling said election, appoint registrars under sec. 2379, of the Rev. Codes of Idaho, and shall such registrars be governed in the performance of their duty in reference to said election by said section?

2. In conducting said election, shall the judges hand the electors a ballot with an indorsement made thereon by one of the judges showing the number of votes which may be cast by said elector by means of said ballot, and shall such elector be permitted to cast more than one vote in said election?

3. In conducting said election, shall persons be permitted to vote who do not reside within the boundaries of said district at the time of said election and are not qualified electors under the laws of the state of Idaho for the county within which said district is situated?

4. Shall parties be permitted to vote at said election who are not electors of the state of Idaho?

5. Shall electors be permitted to cast ballots at said election which have been marked or identified by judges of election?

6. Are sections 1, 2, 3 and 4 of said act of the legislature, approved March 6, 1911, constitutional?

In answer to these inquiries submitted to the court, the court made certain findings of fact, adopting the agreed statement of facts as such findings, and made the conclusion of law that sections 1, 2, 3 and 4 of the act of March 6, 1911, were unconstitutional and that the board of directors of the said Pioneer Irrigation District in calling said election should appoint registrars under sec. 2379 of the Rev. Codes before amendment, and such registrars should be governed in the

performance of their duties by said section. Judgment was rendered accordingly and this appeal is from the judgment.

It is urged upon this appeal by the respondents that secs. 1, 2, 3 and 4 of the act approved March 6, 1911 (Sess. Laws of 1911, p. 461), are unconstitutional for the following reasons: First, that such sections fix a property qualification for voters at elections other than school elections or elections creating indebtedness in violation of sec. 20, art. 1, of the constitution; 2. That such sections extend the right to vote to persons who own lands within the district although such persons may be nonresidents of the district and county where the district is located, and therefore violate the provisions of secs. 2 and 4 of art. 6 of the constitution; .3. That such sections provide for the use of a ballot which contains distinguishing marks and is not a secret ballot, and by reason of such fact such sections are in violation of the provisions of sec. 1, art. 6 of the constitution; 4. That said sections also violate the provisions of secs. 2 and 4, art. 6, of the constitution and sec. 20, art. 1, of the constitution in providing that a voter is entitled to vote after such irrigation works are built and in operation according to inches of water he is entitled to use from such irrigation works, and also in certain cases may vote as many votes as he has acres of land.

These are the principal reasons argued by counsel representing the parties directly interested in this controversy and other counsel who have been permitted to appear and make argument and file briefs as *amici curiae.* The several sections of the constitution referred to and involved in this case are as follows:

Sec. 20, art. 1: "No property qualification shall ever be required for any person to vote or hold office, except in school elections or elections creating indebtedness."

Sec. 2, art. 6: "Except as in this article otherwise provided, every male or female citizen of the United States twenty-one years old, who has actually resided in this state or territory for six months, and in the county where he or she offers to vote, thirty days next preceding the day of .election, if registered as provided by law, is a qualified elector."

Sec. 4, art. 6: "The legislature may prescribe qualifications, limitations and conditions for the right of suffrage, additional to those prescribed in this article, but shall never annul any of the provisions in this article contained."

Sec. 1, art. 6: "All elections by the people must be by ballot. An absolutely secret ballot is hereby guaranteed, and it shall be the duty of the legislature to enact such laws as shall carry this section into effect."

Sec. 2 of the act of March 6, 1911, among other things, provides:

"Every person over the age of twenty-one years, who shall be a citizen of the United States, and a resident of the state of Idaho, and who shall be, at the time of the election at which he offers to vote, the holder of land embraced in any district, or proposed district, and which is irrigated from works owned by said district, or which is to be irrigated from the works proposed to be purchased or built, shall be entitled to vote at any election held under the provisions of this title. And at all such elections held after such irrigation works are built and in operation, or when the irrigation works to be purchased are being operated, every person having the qualifications hereinbefore prescribed shall have the right to cast one vote for each inch of water and a proportionate vote for each fraction of an inch of water which he is entitled to use from such irrigation works for the irrigation of lands held by him and embraced in said district, and, in the election of directors, he shall have the  right to cast the full number of votes to which he is entitled for as many persons as there are directors to be elected at said election; the word 'inch' of water as herein used, means the equivalent of one-fiftieth of one cubic foot of water per second of time; provided, that when it is proposed in the petition to build  new irrigation works, and until such works are in  operation, all persons having the qualifications hereinbefore prescribed shall be entitled to vote at all elections held under the provisions of this title, one vote for each acre of land held by him and embraced in said district, and a proportionate vote for each fraction of an acre so held. . . . . Provided, further, that in  all elections held

under the provisions of this title, ballots printed upon white paper shall be prepared and furnished to the judges of election in each precinct upon which shall be printed in black ink and so arranged as to be easily voted the question or questions to be submitted to the voters, with blank lines upon which the voter shall write the name or names of the person or persons for whom he desires to vote for directors, together with a blank line upon which to write the number of votes which each voter is entitled to vote. . . . .

"When any person shall apply to vote at any election, one of the judges of election shall deliver to the voter a ballot and shall, at the same time, write thereon, in the proper place, in figures, with ink, the number of votes which such person is entitled to vote, as shown by the registrar's list, and the voter shall immediately and without leaving the room where such election is being held, prepare the ballot by crossing out either the word 'Yes' or the word 'No' as he may desire. to vote upon any question or questions submitted, and also by writing on the lines prepared therefor on said ballot the name or names of the person or persons for whom he desires to vote for directors, and shall then return his ballot to the judges of election, who shall deposit it in the ballot-box."

The first and most important question in this case is: Do the sections of the constitution above quoted apply to elections held in irrigation districts created under the laws of this state?

The constitution of this state was adopted by the people of the entire state and was for the government of the people of the state, and the provisions therein found are intended to apply to the entire state, unless otherwise provided, and to every legal subdivision thereof, whether created by the constitution or the legislature. The provisions of the constitution with reference to the qualification of voters were intended to apply not only to state elections, but to elections held by the legal subdivisions of the state. There is no separate or distinct qualification provided by the constitution for voters at elections held in counties, cities, villages or other

municipalities.    To all such elections, secs. 1 and 2 of art. 6 apply.

In the case of *Hertle v. Ball,* 9 Ida. 193, 72 Pac. 953, this court held that irrigation districts were public corporations, and that the general election laws of the state providing for contesting elections applied to contests of elections for directors held in an irrigation district.

In the case of *Hettinger v. Good Road District No. 1,* 19 Ida. 313, 113 Pac. 721, this court had under consideration the validity of an act providing for the organization of a good roads district, and in the course of that opinion this language was used: "It is general in its application and applies alike to all sections of the state where the taxpayers thereof are willing to assume the burden of additional taxation for the purpose of improving the roads within such section, and applies to all good road districts within the state, and relates to all of a class, and is like in its operation to the organization of cities and villages within the state, irrigation districts, and other municipalities, which are provided for by a general law. (*Boise Irrigation Co. v. Stewart,* 10 Ida. 38, 77 Pac. 25, 321.)"

In the case of *City of Nampa v. Nampa etc. Irrigation District,* 19 Ida. 779, 115 Pac. 979, this court, in discussing the status of an irrigation district, said: "An irrigation district is a public *quasi* corporation, organized, however, to conduct a business for the private benefit of the owners of land within its limits.    They are the members of the corporation, control its affairs, and they alone are benefited by its operations."

In the case of *In re Bonds of the Madera Irrigation District,* 92 Cal. 296, 27 Am. St. 106, 28 Pac. 272, 14 L. R. A. 755, the supreme court of California had under discussion the legal status of an irrigation district under the Wright law of California, and in the opinion in that case very exhaustively discusses the legal status of such districts, and says:

"That an irrigation district, organized under the act in question, becomes a public corporation, is evident from an examination of the mode of its organization, the purpose for which it is organized, and the powers conferred upon it.    It can be organized only at the instance of the board of super-

visors for the county,—the legislative body of one of the constitutional subdivisions of the state; its organization can be effected only upon the vote of the qualified electors within its boundaries; its officers are chosen under the sanction and with the formalities required at all public elections in the state,—the officers of such election being required to act under the sanction of an oath, and being authorized to administer oaths when required for the purpose of conducting the election; and the officers when elected being required to execute official bonds to the state of California, approved by a judge of the superior court. The district officers thus become public officers of the state. When organized, the district can acquire, either by purchase or condemnation, all property necessary for the construction of its works, and may construct thereon canals, and other irrigation improvements; and all the property so acquired is to be held by the district in trust, and is dedicated for the use and purposes set forth in the act, and is declared to be a public use, subject to the regulation and control of the state. For the purpose of meeting the cost of acquiring this property, the district is authorized, upon the vote of a majority of its electors, to issue its bonds; and these bonds, and the interest thereon, are to be paid by revenues derived under the power of taxation, and for which all the real property in the district is to be assessed. Under this power of taxation, one of the highest attributes of sovereignty, the title of the delinquent owner to the real estate assessed, may be divested by sale, and power is conferred upon the board of directors to establish equitable by-laws, rules and regulations for the distribution and use of water among the owners of said lands, and generally to perform all such acts as shall be necessary to fully carry out the purpose of the act. Here are found the essential elements of a public corporation, none of which pertain to a private corporation. The property held by the corporation is in trust for the public, and subject to the control of the state. Its officers are public officers chosen by the electors of the district, and invested with public duties. Its object is for the good of the public, and to promote the prosperity and welfare of the public. 'Where

a corporation is composed exclusively of officers of the government, having no personal interest in it, or with its concerns, and only acting as organs of the state in effecting a great public improvement, it is a public corporation.' Angel & Ames on Corp., sec. 32. 'A municipal corporation proper is created mainly for the interest, advantage and convenience of the locality of its people. The primary idea is an agency to regulate and administer the interior concerns of the locality in matters peculiar to the place incorporated, and not common to the state or people at large.' 15 Amer. & Eng. Enc. Law, p. 954. 'Public corporations are such as are created for the discharge of public duties in the administration of civil government.' Lawson, Rights, Rem. & Pr. 332.''

In the case of *Fogg v. Perris Irr. Dist.*, 154 Cal. 209, 97 Pac. 316, the court, in discussing the legal status of irrigation districts, says:

''The proceedings for the organization of the district as we have seen, were regular on the face of the record. The district thereby became *prima facie* a *quasi*-municipal corporation, with defined boundaries established and recorded. . . . . '' And, again, the court says:

''The name of the district, it having by that name a *prima facie* legal existence as such, evidenced in the manner prescribed by law by the necessary official record of the proceedings and order upon which it was declared organized, was a sufficient identification of its boundaries. It constituted a *prima facie* political subdivision of the state for the purpose of an irrigation district, and all persons were required to take notice of the facts shown in the record of its organization.'' (McQuillin, Municipal Corporations, vol. 1, chap. 2.)

In art. 12 of the constitution of this state, an article entitled ''Corporations, Municipal,'' sec. 3, provides: ''The state shall never assume the debts of any county, town or other municipal corporation,'' and sec. 4, among other things, provides: ''No county, town, city or other municipal corporation by vote of its citizens or otherwise,'' etc. While these sections of the constitution do not by name designate irrigation districts as municipal corporations, yet the sections clearly

recognize that there may be other municipal corporations than those specifically named in the constitution; in other words, that there may be municipal corporations other than county, town or city. "Other municipal corporations," as used in the constitution, must necessarily have reference to such municipal corporations as may be created by law in addition to counties, towns or cities, and where the legislature provides for the organization of an irrigation district in the manner provided by the irrigation law of this state by a vote of the qualified electors of the proposed district, and officers are provided for and chosen with the formality usually required for public officers, and such officers are required to qualify as other public officers qualify, and to execute official bonds, and such districts are given power to acquire by condemnation property for the construction of its improvements, and such property is held in trust and dedicated to the use and purposes for which the district is organized, and is a public use, and assessments are provided for upon the property in the district, and a board of directors are authorized to establish rules and regulations for the distribution of the waters among the owners of land within the district, and where every material and essential element of a public corporation, such as cities, towns and villages, is given such district, such district certainly becomes a public corporation and is a political subdivision of the state. If, then, an irrigation district is a political subdivision of the state, similar in kind and character to a county or city in its general form of government, and is a *quasi*-municipal corporation, then there can be no question but that the provisions of the constitution in relation to the qualification of voters within such district are applicable and that all elections held within such district must be conducted within the limits of the constitutional provisions, and that the legislature in creating such district and providing for elections therein cannot prescribe qualifications for electors except within the limitations and provisions of the constitution.

A comparison between the provisions of the constitution cited in this opinion and the statute in controversy clearly

shows that the statute provides qualifications for voters at elections held within an irrigation district after its organization, which are directly in conflict and in violation of the provisions of the constitution, and are necessarily void. The residence provided for by the statute, that is, a residence within the state, is not a residence of six months within the state and thirty days within the county as required by the provisions of the constitution, and is in conflict with the provisions of the constitution, and this provision must necessarily be void for that reason. The qualification of a holder of land or the user of water prescribed a property qualification, and in that respect violates the provisions and the constitution which prohibits such a qualification.

In the case of *In re Bonds of the Madera Irrigation Dist.*, in discussing this provision of the constitution of California with reference to the qualification of voters in an irrigation district, the court said: "It is no more than exists in every popular vote which involves the creation of a municipal debt or the adoption of a municipal organization. The fact that the owners of the lands are nonresidents within the district, and not allowed a voice in the proceedings, is of the same character. Property qualification for voting, either in amount or character, is expressly forbidden by art. 1, sec. 24, of the constitution, which declares: 'No property qualification shall ever be required for any person to vote or hold office'; and however much nonresidents may be affected by the acts and vote of the community, only those who are inhabitants of the district can, by the constitution, be permitted to vote at any election. Art. 2, sec. 1." (*In re Bonds of the Madera Irr. Dist.*, 92 Cal. 296, 27 Am. St. 106, 28 Pac. 272, 14 L. R. A. 755.) It is plain, therefore, that sec. 2 of the act of March 16th, 1911, clearly violates the provisions of the constitution in prescribing a qualification for voters.

A secret ballot is also provided for by the constitution, while the section under review provides that "When any person shall apply to vote at any election, one of the judges of election shall deliver to the voter a ballot and shall, at the same time, write thereon, in the proper place, in figures, with ink,

the number of votes which such person is entitled to vote, as shown by the registrar's list, and the voter shall immediately and without leaving the room where such election is being held, prepare the ballot by crossing out either the word 'Yes' or the word 'No' as he may desire to vote upon any question or questions submitted, and also by writing on the lines prepared therefor on said ballot the name or names of the person or persons for whom he desires to vote for directors, and shall then return his ballot to the judges of election, who shall deposit it in the ballot-box.''

This section also clearly violates the provisions of the constitution in permitting a voter to vote in accordance with the number of acres of land owned by him and the inches of water used, and having his ballot so marked by a judge of election, for by such a method there is an identification of the particular vote cast and the secrecy of the ballot is completely annulled and a publicity given of such vote.

This court held in the case of *McGrane v. County of Nez Perce,* 18 Ida. 714, 112 Pac. 312, that: "Now, in the first place, the constitution of this state, sec. 1, art. 6, *supra,* guarantees to the electors 'an absolutely secret ballot,' and counsel argue that the legislature could not constitutionally enact an election law which would provide for and authorize the numbering of ballots. . . . . In the outset, it is perfectly safe to say that the legislature would have no authority under this constitutional guaranty to require the numbering of the ballots. The authorities to that effect are quite uniform.''

These various sections, 1, 2, 3 and 4, all relate to elections and the method of voting under the provisions of the statute, and are so closely related and connected that if one fails they all must fail, and as such provisions are clearly a violation of the constitution, this court is forced to the conclusion that such sections are unconstitutional and that the judgment should be affirmed. The judgment is affirmed, with costs awarded to the respondent.

Ailshie and Sullivan, JJ., concur.