## NOON v. GEM IRR. DIST.

(District Court, D. Idaho, S. D. May 23, 1913.)

WATERS AND WATER COURSES (§ 228*)—IRRIGATION DISTRICT—QUASI MUNICI-
PAL CORPORATION—NEGLIGENCE OF OFFICERS—LIABILITY.

Rev. Codes Idaho, §§ 2372-2443, provide for irrigation and government of irrigation districts embracing lands susceptible of one mode of irrigation from the common source; the burden of constructing and maintaining the requisite irrigation works being equitably apportioned to the several parcels of land included in the district, and the sole purpose being to irrigate the lands embraced therein. *Held* that, though such an irrigation district is a quasi municipal corporation, it is not such in the sense that it is not legally responsible for the negligence of its officers; and hence where a private person was injured by receiving an electric shock, due to the negligence of such officers in failing to install lightning arresters in a private telephone system maintained for its own convenience, it was liable.

[Ed. Note.—For other cases, see Waters and Water Courses, Dec. Dig. § 228.*]

At Law. Action by Ethel M. Noon against the Gem Irrigation District. On demurrer to complaint. Overruled.

B. A. Cummings, of Salt Lake City, Utah, and Hawley, Puckett & Hawley, of Boise, Idaho, for plaintiff.

John C. Rice and Thompson & Buckner, all of Caldwell, Idaho, and Wyman & Wyman, of Boise, Idaho, for defendant.

DIETRICH, District Judge. The plaintiff alleges that through defendant's carelessness in failing to install lightning arresters in a private telephone system, which it maintains for its own convenience, she sustained personal injuries due to a severe electric shock, and she prays for $10,000 damages. By its demurrer the defendant objects that the complaint fails to state a cause of action; its argument being that, inasmuch as it is a "quasi municipal corporation," it cannot be held legally responsible for the negligence of its officers.

The act under which it was organized and exists constitutes title 14 (sections 2372-2443) of the Idaho Revised Codes, and is similar in its provisions to what is commonly referred to as the "Wright Act" in California. In general it provides for the organization and government of districts embracing lands susceptible of one mode of irrigation from a common source; the burden of constructing and maintaining the requisite irrigation works being equitably apportioned to the several parcels of land included in the district. The sole purpose of such a district is the irrigation of the lands embraced therein.

It is to be conceded that, in harmony with the prevailing rule in California, it is settled by the repeated decisions of the highest court

of the state that such organizations in Idaho constitute a species of public or quasi municipal corporations. Hertle v. Ball, 9 Idaho, 193, 72 Pac. 953; City of Nampa v. Nampa Irrigation District, 19 Idaho, 779, 115 Pac. 979; Pioneer Irrigation District v. Walker, 20 Idaho, 605, 119 Pac. 304; Colburn v. Wilson et al. (Idaho) 130 Pac. 381. But by this rule the precise question under consideration is not necessarily foreclosed. Admittedly there is no express statutory provision, either imposing liability upon public corporations for the negligence of their officers, or exempting them therefrom. Nor is there any decision of the Supreme Court of the state establishing any general rule upon the subject, or directly or indirectly passing upon such a question in its relation to an irrigation district. In Davis v. Ada County, 5 Idaho, 126, 47 Pac. 93, 95 Am. St. Rep. 166, it is held that counties are exempt from liability on account of the negligence of their officers; but, upon the other hand, such liability is declared to rest upon cities and villages. Carson v. City of Genesee, 9 Idaho, 244, 74 Pac. 862, 108 Am. St. Rep. 127; Village of Sandpoint v. Doyle, 11 Idaho, 642, 83 Pac. 598, 4 L. R. A. (N. S.) 810; Eaton v. City of Weiser, 12 Idaho, 544, 86 Pac. 541, 118 Am. St. Rep. 225.

Furthermore, it is clear that in characterizing irrigation districts as public corporations, or public quasi corporations, or quasi municipal corporations, the Supreme Court has not advisedly employed the language for the purpose of classifying them with public corporations, such as counties, as distinguished from municipal corporations, such as cities and villages. Apparently the terms are used indiscriminately, without any thought of such distinction. For instance, in Pioneer Irrigation District v. Walker, supra, after enumerating the powers and characteristics of an irrigation district under the law, the court says:

"* * * * And where every material and essential element of a *public corporation such as cities, towns, and villages,* is given such district, such district certainly becomes a public corporation, and is a political subdivision of the state. If, then, an irrigation district is a political subdivision of the state, *similar in kind and character to a county or city* in its general form of government, and is a quasi municipal corporation, then there can be no question but that the provisions of the Constitution in relation to the qualification of voters within such district are applicable," etc.

Surely there is here manifest no intent to distinguish between the legal status of counties and that of cities and villages, or to put irrigation districts in the one class rather than the other.

Moreover, it will be found upon an examination of the Idaho cases that in all instances except one (City of Nampa v. Nampa Irrigation District) there were involved no questions of the status of an irrigation district, or its rights and responsibilities in relation to third parties, but only questions touching the manner of its organization and its government and control. In the main, such litigated controversies have arisen out of the operation of those provisions which prescribe the manner in which elections shall be held, in connection with the organization of the district, or the issuance of bonds, or the selection of officers, and doubtless such questions are to be viewed in the light of principles which apply to political elections, because in that respect there is a substantial similarity between irrigation districts

and governmental subdivisions like counties and cities; but beyond that feature the analogy does not extend. It would be a mistake to conclude that, because by law its elections are in form assimilated to those in subdivisions of a political character, an irrigation district is essentially a political unit. Only in the most remote sense can it be said to exercise any governmental functions, or to sustain any relation to the political system of the state. Primarily it is brought into existence and maintained for the purpose of ministering to the pecuniary benefit of private persons holding irrigable lands within its territorial limits. Doubtless it contributes to the public good in that, through it, the material resources of the state are developed; but such indirect benefit, to a greater or lesser degree, also flows from the construction of a railroad or the building of a private ditch. So far as the controlling purpose and object are concerned, no distinction can be made between a district of this character and a community served exclusively by an irrigation system constructed under the Carey Act, where the operating company is made up entirely of members or stockholders, who are the owners and tillers of the soil to which the water is applied. In all essential respects the purposes and accomplishments of the one are quite as public as those of the other, and it is difficult to see why one corporation in charge of such a public use should be put into a more favored class than another corporation in charge of the same public use. It is doubtless true that general language is used in some of the decisions implying a different view; but such language must be understood in the light of the questions under consideration, which, as already stated, have in the main pertained to the organization and government of the district, and not to the relations between the district and third persons.

In City of Nampa v. Nampa Irrigation District, 19 Idaho, 779, 115 Pac. 979, the only case involving the relations of such a district to third persons, the following pregnant language is used:

"An irrigation district is a public quasi corporation, organized, however, to conduct a business for the private benefit of the owners of land within its limits. They are the members of the corporation, control its affairs, and alone are benefited by its operations. It is, in the administration of its business, the owner of its system in a proprietary rather than a public capacity, and must assume and bear the burdens of proprietary ownership."

If, as we are bound to do, we take this expression of the highest court of the state as a correct interpretation of the local law, and if, therefore, the defendant was organized to conduct a business for the private benefit of the owners of land within its limits, and if, in the administration of its business, it "must assume and bear the burdens of proprietary ownership," it is difficult to see how it can escape responsibility for the negligence of its agents and employés, which, under the common law, is one of the burdens of proprietary ownership. In reality there is no analogy between a county, organized, as it is, "for the discharge of public duties in the administration of civil government," and holding, as it does, its property in a public, and not a proprietary, capacity, and an irrigation district; and surely

no substantial reason can be given for holding a village organization responsible for the negligence of its officers, and exempting an irrigation district therefrom. If for the moment we abandon the effort to make applicable the precedents where counties are held exempt and those where cities and villages are held liable, and put aside empty names and legal formulæ, and, in the light of existing industrial conditions, appeal to reason only, what should the answer be?

An irrigation district is fully empowered by law to manage its own affairs, and to select its own officers and agents for that purpose. The whole matter is entirely in the hands of the parties pecuniarily interested, and they may select careful and competent agents, or those who are careless and incompetent. The defendant is clothed with the right of eminent domain. It may acquire and hold property of great value; its resources are ample. Power is conferred upon it of levying and collecting assessments or dues from its members, or from the lands irrigated, to cover maintenance and operating charges. It may meet an obligation of this character and equitably apportion the burden thereof to all who profit by its activities. It is authorized to take from its natural channel, where it flows without menace to any one, the public water of the state, and place it in artificial channels, where, if they are not properly constructed and maintained, it becomes the source of constant peril to contiguous and adjacent property. And yet, if the rule for which the defendant contends is recognized, it may not only escape liability for the claim here under consideration, but for the damage which may at any moment overwhelm the farmer as a consequence of the negligence of agents which it alone has the power to employ and discharge. It may not enter upon private land, and take a right of way for its canals and ditches, without first duly compensating the owner; but, if the view here urged obtains, it may, after constructing such canals and ditches, flood adjacent lands without liability, or, through the carelessness of its officers and employés, water may be permitted to escape from its canals and destroy the growing crops of its own members, and they be left remediless.

It is of no avail to say that a legal responsibility might rest upon such negligent officers or agents individually. It is not to be presumed that the particular individual chargeable with the negligence in any given case would possess such financial responsibility as to make that remedy of any practical value. As well might we relegate the injured railway passenger to an action against the negligent engine driver, instead of holding the corporation responsible. I can see no reason why, in a case of this character, or in the supposed case where a farmer's crop is flooded and destroyed by the negligent breaking of one of the defendant's ditches, the industry, instead of the individual or society at large, should not bear the loss. If, as sometimes happens, it should turn out that the plaintiff here has, by reason of her injury, been wholly disabled, and has therefore become dependent, it is only fair that those who profit by the enterprise out of which the accident grew should assume the burden, rather than the general public.

But, however that may be, in the absence of a clear expression of the legislative intent, or a controlling decision by the Supreme Court of the state so construing the law, I am unwilling to extend to such an organization the benefit of a rule which I am inclined to think is, under modern conditions, extremely harsh and of doubtful wisdom, even when applied to public quasi corporations like counties, created and maintained, as they are, merely as governmental agencies. In view of the fact that the primary purpose of an irrigation district is private profit to its members, I cannot think that it was the intention of the Legislature to exempt it from this responsibility. Enjoying the rights and benefits of proprietary ownership, it should not be relieved from the burdens thereof.

The demurrer will therefore be overruled.