GILBERTO QUINTERO JIMÉNEZ, Plaintiff and Appellant, *v.*
ISABELA IRRIGATION SERVICE, Defendant and Appellee.

No. 9339. Argued November 14, 1946.—Decided February 24, 1947.

*Héctor A. Rodríguez Escudero* for appellant. *Luis Negrón Fernández, Acting Attorney General (E. Campos del Toro, former Attorney General,* on the brief), and *J. B. Fernández Badillo, Deputy Attorney General,* for appellee.

Mr. Justice De Jesús delivered the opinion of the court.

This is an action of damages brought against the Isabela Irrigation Service. As a cause of action it is substantially alleged: That plaintiff is the owner of a property of fifteen acres of land situated in the ward of Montaña, Aguadilla, along the north side of which runs a canal belonging to the Isabela Irrigation Service; that this canal frequently floods a large part of plaintiff's property, having caused him damages amounting to $825; that these damages have been caused solely and exclusively through the fault and negligence of the Isabela Irrigation Service, its agents or employees, by reason of having unduly neglected the canal and having failed to take the necessary steps to avoid such floods, notwithstanding plaintiff's repeated requirements and demands.

The Commissioner of the Interior appeared in this action in the name and on behalf of the Irrigation Service and filed a motion for dismissal. He rested his motion on lack of jurisdiction and on the insufficiency of the complaint.

The order granting the motion for dismissal is predicated on *Banuchi* v. *Irrigation District,* 43 P.R.R. 751. The lower court interpreted this decision as holding that the Isabela Irrigation District is a corporation that partakes of a dual character, it being a public corporation in some cases and a private corporation in others, and that it may be sued for damages in actions *ex contractu* but not in actions *ex delicto* and that, since the action brought here is of the latter character, the Irrigation System can not be sued. Another ground set forth by the lower court, although inconsistent with the ruling in *Banuchi* v. *Irrigation District, supra,* was

that the Isabela Irrigation District is not a public corporation but an agency of the Government of Puerto Rico which may not be sued without the consent of the sovereign and that the latter has never given it.

Appellant bases his appeal on the failure to follow the cases of *Banuchi* v. *Irrigation District*, 43 P.R.R. 751, and 52 P.R.R. 354, and to apply Joint Resolution No. 38 of May 11, 1937.[1]

■ What this court really held in the first *Banuchi* case was that the Isabela Irrigation District was a corporation which partook of a dual character; and that in addition to the remedy provided in § 34[2] of Act No. 63 of 1919 (Laws of 1919, p. 348), it is liable for damages when it acts as a corporation but not in its public capacity. And as to the case which it had under consideration it held that although the complaint was not sufficient, it might be amended and remanded the case for further proceedings. This court did not decide in that case, as alleged by the court *a quo* and the appellee, that the Irrigation Service was not liable for damages arising out of actions *ex delicto*.

The second *Banuchi* case dealt with an action for damages brought by a landowner whose land had been included within the temporary irrigation district. There plaintiff alleged that the Isabela Irrigation Service offered to furnish water; that relying on this offer he planted 34 acres of cane; that after some time the defendant discontinued the irrigation service, that by reason of this dicontinuance he suffered damages because the production was less than if the land

---

[1] Joint Resolution No. 38 of May 11, 1937, was included in Act No. 130 of May 6, 1938.

[2] Section 34, in its pertinent part, provides:

". . . *Provided, however,* That nothing in this Act shall prevent the proper distribution of water by rotation among the various tracts of land through any canal or lateral, and that should any owner or lessee of such land believe himself aggrieved by the refusal of the Commissioner of the Interior of Porto Rico to furnish water, such owner or lessee may bring action in the district court of the district in which the said lands are situated to compel the Commissioner of the Interior of Porto Rico to turn the water onto the land; . . ."

would have enjoyed the drainage until the cane had been cut; that he also suffered damages because, as he claimed, upon selling the property to the Central Cambalache the selling price was less than what he would have received for the same land if it had still enjoyed the benefits of the Irrigation Service. The district court held that Banuchi should have first exercised the right of review granted him under § 34 of Act No. 63 of June 19, 1919, and that the amount to be recovered for damages could not exceed those which he would have suffered had he timely availed himself of that remedy. It dismissed the complaint, without prejudicing plaintiff's right to bring another suit confining his evidence to those damages which the court had deemed recoverable. This court admitted, without discussion, that the Irrigation District can be sued for damages and that the remedy granted under § 34 does not exclude the action for damages, as we held in the first *Banuchi* case. The judgment was reversed and another entered in favor of the plaintiff for $1,000 as damages.

The decision in the first *Banuchi* case is predicated upon a citation of Long on Irrigation, which in turn was taken from the opinion in *City of Nampa* v. *Nampa & Meridian Irr. Dist.*, 115 Pac. 979, 982 (Idaho 1911), wherein Mr. Justice McLane speaking for the court said:

"An irrigation district is a public quasi corporation, organized, however, to conduct a business for the private benefit of the owners of lands within its limits. They are the members of the corporation, control its affairs, and they alone are benefited by its operations. It is, in the administration of its business, the owner of its system in a proprietary rather than in a public capacity, and must assume and bear the burdens of proprietary ownership."

The character of a legal institution does not depend on how it has been labeled but on its features as expressed in the law creating it. Consequently, we must examine and compare both statutes, the one from Idaho to which we re-

ferred above and that of Puerto Rico, in order to determine whether both irrigation districts have similar features.

Upon examining the Idaho statute we shall see that § 2444 *et seq.* of the Political Code establishes the prerrequisites in order to organize a drainage district. Section 2444 says that five or more inhabitants and landowners of any portion of a county, may be organized into a drainage district; that the organized district, shall be entitled to sue and be sued, not in the name of the State of Idaho, but on that of the Board of Commissioners of the district; that it shall have perpetual succession and shall adopt and use a seal; that the commissioners of the district shall have the power and it shall be their duty to manage and conduct the business and affairs of the district, make and execute all necessary contracts, appoint such agents, officers and employees as may be required, prescribe their duties and perform such other acts as hereinafter provided by law.

It seems clear that a drainage district organized under the Idaho statute is a public corporation and as such may be sued in connecion with its corporate acts.

On the other hand, Act No. 63 of June 19, 1919, creating the Isabela Irrigation District, does not empower the district to sue or be sued; it does not authorize it to adopt or use a seal or to have perpetual succession, which powers are typical in a corporation, whether public or private. On the contrary, once the Irrigation Service has been organized and the lands which are included within the irrigation district determined, the Irrigation Commission disappears by provision of law and the Commissioner of the Interior and the Chief Engineer are in charge of the management and supervision of the Irrigation District. It is the Commissioner of the Interior, pursuant to § 36, who, subject to the approval of the Executive Council, shall fix the terms under which the water shall be supplied to municipalities and manufacturing and industrial enterprises and the price thereof. The money of the Irrigation District shall be covered into the

Treasury of Puerto Rico under the "Isabela Irrigation Fund." The remedy granted under § 34 of the Act, to any landowner or lessee of land included within the Irrigation District aggrieved by the refusal of the Commissioner of the Interior to supply water, is an action against the Commissioner of the Interior of Puerto Rico in order to compel him to allow the water to pass into plaintiff's land.

The circumstances we have just recited leave no doubt that the Isabela Irrigation District is not a corporation, public or private, but, that it, is the People of Puerto Rico itself, acting for the benefit of the landowners who make the district.[3] This being so, we must now determine whether the People of Puerto Rico has given its consent to be sued in this kind of actions.

■ Under § 1 of Act No. 76 of April 13, 1916 (Laws of 1916, p. 151), the People of Puerto Rico gave its consent to be sued in an action for damages based upon contracts executed after the effectiveness of the Act; and under § 4 thereof it imposes, as a condition precedent to commencing the suit, the furnishing of a bond satisfactory to the court in the sum of $500 to answer for costs, provided that the court could exempt any litigant who was unable to furnish the bond from giving the same. As it may be seen, pursuant to the above cited Act No. 76 of 1916, the People of Puerto Rico did not give its consent to be sued in actions *ex delicto,* as in the present case. But §§ 1 and 4 of Act No. 76 of 1916 were amended by Act No. 11 of April 18, 1928 (Laws of 1928, p. 130), to the effect that the People of Puerto Rico gave its consent to be sued in actions for damages without any limitation, that is, for damages in actions *ex contractu* as well as those arising out of actions *ex delicto.* And § 4 was also amended so that the amount of the bond to be furnished by the litigant, shall be $2,000 instead of $500 as previously required.

---

[3] The cases of *Banuchi,* insofar as they are incompatible with this conclusion, should be considered overruled.

 Appellee contends that since the action brought in this case is against the People of Puerto Rico and the latter is not liable for damages either by commssion or omission, unless it be through a special agent, and as the employees of the Irrigation Service are not the special agents contemplated by § 1803 of the Civil Code, the People of Puerto Rico is not liable for damages caused by said employees.

Under Act No. 130 of May 6, 1938, above referred to, amending § 11 of Act No. 63 of June 19, 1919, which created the Isabela Irrigation District, the People of Puerto Rico authorized the Commissioner of the Interior, together with the Attorney General, to settle claims for damages caused by the negligence of employees of the Irrigation Service within the district where the works of the Irrigation Service are located. The statement of motives preceding the Act contains the following:

"WHEREAS, In accordance with the terms of the said Section 11, the Commissioner of the Interior lacks authority or power to compromise claims for damages caused by the negligence of the employees of the Isabela Irrigation Service within the district where the works of the Isabela Irrigation Service are located, in cases where it is advisable to do so, in the opinion of the Commissioner of the Interior, after an investigation is made by the Chief Engineer of the Isabela Irrigation Service and his report is examined by the Attorney General, *and the latter believes that The People of Puerto Rico is responsible for the damages caused.*" (Italics ours.)

And § 11, as amended by said Act, insofar as pertinent, provides:

". . . *Provided* That the Commissioner of the Interior is hereby authorized and empowered to compromise, when in his judgment, it is advisable to do so, any claim not exceeding one thousand (1,000) dollars, filed for damages to property or to any person, caused by the negligence of the employees of the Isabela Irrigation Service within the district where the works of the irrigation service are located, after an investigation has been duly made by the Chief Engineer of the Isabela Irrigation Service, and after a favorable

894

opinion thereon has been rendered by the Attorney General of Puerto Rico; *Provided*, That every claim allowed in accordance with the authority vested in the Commissioner of the Interior shall be paid out of the funds of the Isabela Irrigation Service."

We should presume that when the Act just quoted was enacted, the Legislature was aware that the People of Puerto Rico is only liable for damages flowing from negligence when such damages are caused by the special agent contemplated by § 1803 of the Civil Code. Nevertheless, Act No. 130 of May 6, 1938, authorized the Commissioner of the Interior to settle claims for damages caused by the negligence of employees of the Isabela Irrigation Service, within the district where the works of the Irrigation Service are located, in those cases where in the opinion of the Commissioner, it was *advisable* to do so and the Attorney General believed that the People of Puerto Rico was *liable* for damages caused. Hence in order that a compromise should take place, it is necessary not only that the damages be caused through the negligence of the employees of the Irrigation Service within the district that the works are located, but also that in the opinion of the Commissioner, the compromise should be *advisable* and in the opinion of the Attorney General the People of Puerto Rico *should be liable for the damages caused*. If pursuant to § 1803 of the Civil Code, the People of Puerto Rico is only liable for damages when they are caused by a special agent, since the employees of the Irrigation Service are not special agents of the People of Puerto Rico, how could the Commissioner of the Interior believe that it was advisable for the People of Puerto Rico to compromise, if according to said Section, the People of Puerto Rico would not be liable for such damages? In what consisted the advisability of such a compromise? And on what legal authority could the Attorney General rely for concluding that the People of Puerto Rico was liable for damages caused by those employees, unless, pursuant to the Act, it should be understood that the People of Puerto Rico had accepted the liability

for the damages caused by them? A different construction would lead to the absurd conclusion that the Legislature of Puerto Rico in enacting the Act in question, made an idle gesture, for in no case may a compromise takes place unless in its opinion the People of Puerto Rico is liable for the damages caused by the negligence of said employees.

The above reasoning shows that plaintiff's action is against the People of Puerto Rico and not against the Isabela Irrigation Service and that, since the People of Puerto Rico assumes responsibility for the damages caused by the employees of the Irrigation Service under the aforesaid condition, neither the special agent doctrine contained in § 1803 of the Civil Code nor the cases of *Ortiz* v. *People,* 44 P.R.R. 146, and *Soto* v. *Lucchetti,* 58 P.R.R. 715, are applicable.

But in both of the *Banuchi* cases, *supra,* this court decided that the Isabela Irrigation Service was a legal entity which could be sued and until these decisions were overruled, their holding was binding on the lower courts. In bringing his action, plaintiff followed the doctrine heretofore established in this jurisdiction and did not file his complaint against the People of Puerto Rico, but against the entity which, according to those decisions, was liable for the damages. If we should merely affirm the judgment and plaintiff should now file a complaint against the People of Puerto Rico, since the complaint under consideration was filed on June 13, 1945, the plea of prescription could be successfully set up and our judgment would work an injustice on the plaintiff without any real benefit to the defendant. Therefore, in furtherance of justice, the judgment appealed from is set aside and the case remanded to the lower court with instructions to grant the plaintiff the term of fifteen days within which, if he deems it advisable, he may file a complaint against the People of Puerto Rico. Cf. *Cuesta & Co.* v. *Treasurer,* 54 P.R.R. 82.