## APPEAL OF CALDWELL MILLING CO.

Docket No. 1166.   Submitted November 17, 1925.   Decided April 16, 1926.

Revenue Act of 1918, section 234, subdivision (a) (3) (c), *construed;* the provision excluding from taxes deductible from gross income " those assessed against local benefits of a kind tending to increase the value of the property assessed " means special or local assessments as a class.

*Phil D. Morelock* and *Dudley Doolittle, Esqs.,* for the taxpayer.
*Briggs G. Simpich, Esq.,* for the Commissioner.

Before STERNHAGEN, LANSDON, and ARUNDELL.

The Commissioner determined a deficiency of $81.32 in income and profits taxes for the fiscal year ended June 30, 1920. The deficiency arises from the disallowance by the Commissioner as a deduction from gross income of the sum of $1,131.59 paid in discharge of an assessment against real property of the petitioner for a local street improvement.

### FINDINGS OF FACT.

The petitioner is a Kansas corporation with its principal office at Caldwell. It owns lots on both sides of Arapahoe Street in that city, and upon the lots on the east side of the street are situated its mill, grain elevator, and auxiliary buildings. To the south of petitioner's property Arapahoe Street runs into Main Street. The southerly line of its property is about 50 feet north of Main Street. In 1919 Main Street was paved by the city. By ordinance, the city laid out assessment districts embracing the property declared to be benefited, and the cost of the paving was assessed against such property. In the vicinity of Arapahoe Street, the assessment district

embraced property within 150 feet of Main Street, and thus included three lots on the west side and four lots on the east side of Arapahoe Street owned by the petitioner. Between petitioner's property and Main Street, on the east side of Arapahoe, with a frontage of 50 feet on the latter, are two lots owned by the Chicago, Rock Island & Pacific Railroad Co., which are leased to the former. Its office is located on this plot.

The pavement on Main Street extended easterly as far as the right of way of the Chicago, Rock Island & Pacific Railroad, which adjoins petitioner's property on the east and runs in a north and south direction in general parallel to Arapahoe Street. Main Street forms a segment of a road which runs out through the neighboring country, in one direction to South Haven, about 11 miles distant, and to other points. About three years after the pavement of Main Street, this road was paved, and, including the Main Street segment, became part of the Meridian Highway. This road is used by farmers in bringing grain to the petitioner's mill.

The population of Caldwell in 1919 was 2,071, and in 1920 it was about the same; in 1925 it was 1,856.

The market value of the petitioner's lots in 1920, after the pavement of Main Street, was no greater than it was before the pavement was laid.

OPINION.

ARUNDELL: The Revenue Act of 1918, section 234, subdivision (a) (3) (c), allows as deductions from gross income taxes " imposed * * * by the authority of any State or Territory, or any county, school district, municipality, or other taxing subdivision of any State or Territory, *not including those assessed against local benefits of a kind tending to increase the value of the property assessed.*" (Italics ours.) The petitioner contends, in substance, that in order to determine whether any tax comes within the terms of the excluding clause, we must answer the question, " Did the local benefit for which the tax was imposed increase the value of the property of the particular taxpayer?" If it did not, the tax, according to the argument, is not within the terms of the exclusion and the amount thereof may therefore be deducted in computing net income. Testimony was introduced to show that, in the year following the one in which the improvement was made, the market value of the land was no greater than it was before the improvement was made. In support of its position as to the law, the petitioner points to the fact that in the Revenue Acts of 1909, 1913, 1916, and 1917, the corresponding provision read simply " not including those [taxes] assessed against local benefits," and that in the 1918 Act

there was added.to this clause the words " of a kind tending to increase the value of the property assessed."

The clause obviously expresses an intention to specify a class or kind of tax which is excepted from those which may be deducted. What we are called upon to decide is whether the tax here sought to be deducted belongs in the class referred to. As a preliminary, however, it is necessary to determine what the class is, for the language requires construction. The term " taxes " is used. There is a class of impositions made upon property in the immediate vicinity of a local public improvement to pay for the improvement, which is known in both popular and legal parlance as special or local assessments. Ordinarily, the terms " assessments " and " tax " or " taxation," as used in constitutions and statutes, are not synonymous, and have been given entirely distinct meanings by the courts. 25 R. C. L. 84, and cases there cited. Special assessments are governed by principles that do not apply universally to taxation. *Illinois Central R. R. Co.* v. *Decatur*, 147 U. S. 190. Is the expression " taxes * * * assessed against local benefits " standing alone to be interpreted to mean special assessments; and if so, did Congress in adding, in the 1918 Act, the phrase " of a kind tending to increase the value of the property assessed " intend to restrict to a particular sort the special assessments that might be deducted?

Special assessments are laid with reference to the special benefit which the property assessed derives from the expenditure of the money. The whole theory of such an assessment is generally held to be based on the doctrine that the property against which it is levied derives some special benefit from the improvement aside from the mere general advantage resulting to the community at large. " Taxes proper, or general taxes, proceed upon the theory that the existence of government is a necessity; that it cannot continue without means to pay its expenses; that for those means it has the right to compel all citizens and property within its limits to contribute; and that for such contribution it renders no return of special benefit to any property, but only secures to the citizen that general benefit which results from protection to his person and property, and the promotion of those various schemes which have for their object the welfare of all. ' The public revenues are a portion that each subject gives of his property in order to secure or enjoy the remainder.' " *Illinois Central R. R. Co.* v. *Decatur, supra; Loan Association* v. *Topeka*, 20 Wall. 655, 664.

We think Congress used the word " taxes " in this subdivision in a broad sense, and that when it qualified " taxes " by the words " those assessed against local benefits " it meant to specify that kind of tax commonly denominated special or local assessments, since the latter have their basis in compensating benefits.

We now come to the phrase mentioned above which was added in the 1918 Act. We have already adverted to the theory that special assessments must be levied with reference to the special benefits conferred upon the owners of the property taxed. In the case of *Norwood* v. *Baker*, 172 U. S. 269, 278, 279, the Supreme Court thus declares the rule:

> The principle underlying special assessments to meet the cost of public improvements is that the property upon which they are imposed is peculiarly benefited. * * * The exaction from the owner of private property of the cost of a public improvement in substantial excess of the special benefits accruing to him is, *to the extent of such excess*, a taking, under the guise of taxation, of private property for public use without compensation. We say "substantial excess," because exact equality of taxation is not always attainable, and for that reason the excess of cost over special benefits, unless it be of a material character, ought not to be regarded by a court of equity when its aid is invoked to restrain the enforcement of a special assessment.

So far as our researches disclose, this principle is recognized by almost all of the States, including the State of Kansas. *Union Pac. R. Co.* v. *City of Abilene*, 78 Kan. 820; 98 Pac. 224, 227; *Gilmore* v. *Hentig*, 33 Kan. 156; 5 Pac. 781. If the assessment were not based upon an increment of benefit to the property assessed, resulting from the improvement, it would, by the great weight of authority, be invalid. This being so, Did Congress, when it added the phrase referred to above, intend to subject special assessments to the test which would be required if petitioner's contention were sustained, in order to determine their deductibility? Let us consider what the situation would be. The municipality made the improvement, determined an assessment district embracing the property supposed to be benefited and the amount of the supposed benefits, and made assessments accordingly. It must be presumed that the municipality acted under proper legislative authority and in accordance with the grant of authority. It must be presumed further that the property owners, including this petitioner, had an opportunity to present objections to the municipal authorities, and that the courts of Kansas were open to them to correct any error or illegality in the assessment. Those are the forums in which any question affecting the validity of the assessment should be raised. If its invalidity were established, of course the assessment would not have to be paid at all. The assessment was paid and there is no evidence that petitioner or any other property owner made any protest or raised any objection to the improvement or to the assessment. We are asked now—in connection with a claim for a deduction from gross income—to consider facts which tend to show the assessment was unconstitutional, after petitioner has acquiesced in the assessment. A consequence of adopting the construction con-

tended for would be that the question of deductibility of assessments for any local public improvements in the United States would depend upon facts which, if established, might affect the validity of the assessment, and which, if urged in the proper forum, might result in no assessment. We can not ascribe to Congress any such purpose. We are to presume that Congress in framing the Revenue Act of 1918 knew the law relative to special assessments and had regard to the principles underlying their imposition. *Welch* v. *Cook*, 97 U. S. 541, 543. We think the phrase in question was added in an attempt to clarify the clause and to distinguish local public improvements, the cost of which is assessed only against the property benefited, from those indirect benefits resulting from improvements such as schools, parks, water works, etc., which are usually paid for out of general taxes.

The tax here sought to be deducted is admittedly a special assessment for a local public improvement.

*The deficiency is $81.32. Order will be entered accordingly.*