*227 OPINION.
Siefkin:
The petitioners having abandoned one assignment of error, and the respondent having admitted error as alleged in one of the assignments of error, the questions remaining for consideration are:
*228 (1) Whether the jeopardy assessment in the amount of $5,869.51 assessed by the respondent on March 19, 1925, was in error.
(2) Whether the consolidated net income for the years 1918 to 1923, inclusive, should be reduced by taxes paid to the City of Kansas City, Mo., under ordinances providing for special benefit district assessments. (This also includes the question of whether cost of repaving and recurbing in front of property belonging to petitioner is deductible as a cost of repairs necessary to the conduct of petitioner’s rental business.)
(3) Whether the petitioner, Belfast Investment Co., is entitled to a deduction for amortization of the Lee Tract Warehouse in determining consolidated net income for 1918. (Petitioner, in this connection, also raises the alternate question of whether it is entitled to a deduction for loss of useful value of the warehouse, if we find it was not a war facility.)
(4) The March 1, 1913, value for purposes of calculating gain or loss upon the sale of certain land at Versailles, Morgan County, Mo.
(5) Whether the invested capital of the Simcoe Realty Co. an affiliated company, should be increased for the year 1918.
(6) The computation of the invested capital of the Kansas City Leasehold & Improvement Co. for 1918.
(7) Whether a-March 1, 1918, value for amortization-purposes of a certain leasehold belonging to the Kansas City Leasehold & Improvement Co., an affiliated company, should be allowed, and if so, in what amount.
(8) The proper amount of depletion and depreciation allowable on certain clay pits belonging to the Ontario Realty Co. for the years 1918 to 1923, inclusive.
(9) The proper deduction for depreciation sustained on certain buildings and equipment owned by Velie Realty Co. an affiliated corporation, for the years 1922 and 1923.
(10) The proper deduction for depreciation sustained on certain buildings owned by the Ark-Mo-Realty Co., an affiliated corporation, for the years 1922 and 1923.
(11) The proper deduction for depreciation on certain equipment owned by the Ark-Mo-Realty Co.
(1) The total tax assessed by the respondent for the year 1918 is $47,012.14, of which $94.84 was assessed on the original return. Respondent, in the deficiency letter, proposed to reduce this assessment in the amount of $36,411.91 resulting in a tax liability of $10,600.23, of which $94.84 was paid, leaving a deficiency of $10,505.39. Respondent admits that only the amount of $5,869.51 is now collectible. His contention that this amount is collectible is based upon the fact that it was assessed in March, 1925, within the statutory period as *229 extended by the waiver, and after the passage of the Revenue Act of 1924, which provides in section 278 (d) that where the assessment ,is made within the period prescribed in section 277 the tax may be collected at any time within six years after the assessment. The respondent admits that an amount of $4,730.72 of the deficiency is uncollectible, due to the fact that it was assessed in May, 1924, prior to the passage of the Revenue Act of 1924.
The contention of the petitioner is that the proposed overassessment amounting to $36,411.91 should be applied first to the assessment of March, 1925, and the remainder to the assessment of May, 1924. If this procedure were followed the entire deficiency would be attributable to the assessment in 1924, the collection of which is barred.
The evidence discloses that the assessment of $5,869.51 made in March, 1925, was made within the time extended by the waiver. The collection of this deficiency is, therefore, not barred by the statute of limitations, since section 278 (d) of the Revenue Act of 1924 provides six additional years for collection after assessment is made.
An accountant who testified as a witness for the petitioner stated that, if the invested capital as finally allowed by the respondent had been used at the time the additional tax liability of $5,869.51 was computed, there would have been no additional tax. Petitioner takes the position that respondent, in his final determination, lias admitted error and that we should hold that the over assessment proposed by the respondent wipes out the assessment of $5,869.51. However, the respondent denies the error alleged and the.question raised concerns the true tax liability of the petitioner. The function of this Board is to redetermine deficiencies in tax asserted against taxpayers, and to carry out this function it is necessary for us to have before us all of the evidence necessary to determine the true tax liability. From the meagre evidence which we have been furnished we cannot determine what the true tax liability of the petitioner was and we certainly will not attempt to apportion the proposed overas-sessment as between the assessments of May 27, 1924, and March, 1925.
(2) The evidence discloses that the City of Kansas City, Mo., made certain improvements in the nature of parks, trafficways, viaducts, etc., and in accordance with the statutes of the State of Missouri, created certain benefit districts, the property within which was assessed, theoretically, at least, in proportion to the benefit it derived from the improvements.
Petitioners contend that their property against which certain of these assessments were made was not benefited any more by these improvements than properties in the city which were not located *230 within the benefit districts. They contend that these improvements did not tend to increase the value of their properties any more than any other property in Kansas City, Mo., and that under section 234 of the Revenue Act of 1918 and section 234 of the Revenue Act of 1921, the amounts so assessed against them are deductible from gross income.
Section 234 (á) of the Revenue Act of 1918 provides:
That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:
* * * * * * #
(3) Taxes paid or accrued within the taxable year imposed ⅜ * * (c) by the authority of any State or Territory, or any county, school district, municipality, or other taxing subdivision of any State or Territory, not including those assessed against local benefits of a kind tending to increase the value of the property assessed; * * *
Section 234 (a) of the Revenue Act of 1921 provides:
That ,in computing net income there shall be allowed as deductions:
*******
(3) Taxes paid or accrued within the taxable year except ⅜ ⅜ * (c) taxes assessed against local benefits' of a kind tending to increase the value of the property assessed * * *.
Petitioner relies upon Caldwell Milling Co., 3 B. T. A. 1232. Plowever, in that case we clearly held that assessments made upon the theory that property was benefited to the extent of the assessments were not deductible and that we would not delve into the question as to whether, in fact, the property was so benefited.
In that case we said:
* * * If the assessment were not based upon an increment of benefit to the property assessed, resulting from the improvements, it would, by the greatest weight of authority, be invalid. This being so, Did Congress, when it added the phrase referred to above, intend to subject special assessments to the test which would be required if petitioner’s contention were sustained, in order to determine their deductibility? Let us consider what the situation would be. The municipality made the improvement, determined an assessment district embracing the property supposed to be benefitted and the amount of the supposed benefits, and made assessments accordingly. It must be presumed that the municipality acted under proper legislative authority and in accordance with the grant of authority. It must be presumed further that the property owners, including this petitioner, had an opportunity to present objections to the municipal authorities, and that the courts of Kansas were open to them to correct any error or illegality in the assessment. Those are the forums in which any question affecting the validity of the assessment should be raised. If its invalidity were established, of course the assessment would not have to be paid at all. The assessment was paid and there is no evidence that petitioner or any other property owner made any protest or raised any objection to the improvement or to the assessment. We are asked now — in connection with a claim for a deduction from gross income— to consider facts which tend to show the assessment was unconstitutional, *231 after petitioner has acquiesced in the assessment. A consequence of adopting the construction contended for would be that the question of deductibility of assessments for any local public improvements in the United States would depend upon facts which, if established, might affect the validity of the assessment, and which, if urged in the proper forum, might result in no assessment. We can not ascribe to Congress any such purpose.
See, also, F. A. Smith, 11 B. T. A. 301, and Champion Coated Paper Co., 10 B. T. A. 433.
In the case of In re Oak Street, Kansas City v. McTernan, 273 S. W. 105, the Supreme Court of Missouri stated:
The argument is again pressed that whatever benefit may be derived from widening and extending Oak Street is city wide, and not confined to the immediate locality of the improvement. In this connection it may bo said that the fact, if a fact, that Oak Street, as widened and extended, is designed to become a part of the most used thoroughfare in Kansas City, is wholly immaterial on the question of special benefits. This because the property in the immediate locality of the improvement presumptively receives a benefit entirely different from that which inures to the public at large. That an ordinance of Kansas City, which conforms to the provisions of its charter, may, without transgressing constitutional limitations, provide for the ascertainment of both the public and the private benefit, and require each to contribute to the expense of the improvement from which they are respectively derived, is no longer an open question.
We must hold that the amounts paid by petitioners as a result of assessments made by the City of Kansas City, Mo., are not deductible under section 234 of the Revenue Act of 1918 and section 234 of the Revenue Act of 1921.
Petitioners further contend that amounts paid by them for repaving and recurbing streets on which they owned properties are deductible as expense of their business of leasing properties, since such improvements greatly facilitated the renting of the properties. However, since section 234 of the Revenue Act of 1918 and section 234 of the Revenue Act of 1921 specifically preclude the allowance of these assessments as deductions, they are not deductible under any theory.
(3) The petitioner, Belfast Investment Co., during the year 1917, entered into a contract with the United States Government whereby it agreed to construct and equip a building to be used for the purpose of storing, baling and shipping hay destined for the American Expeditionary Forces in France. Petitioner did construct such a building at a cost of $84,750.31. The United States Government occupied this building until June 30, 1918. Petitioner is now claiming a deduction for amortization of the cost of this building.
Section 234 of the Revenue Act of 1918 provides:
(a) Tliat in computing net income there shall be allowed as deductions;
* ⅝ * ⅜ * * *
(9) In the case of buildings, machinery, equipment, or other facilities, constructed, erected, installed, or acquired, on or after April 6, 1917, for the pro- *232 «taction of articles contributing to tbe prosecution of tbe present war, and in tbe case of vessels constructed or acquired on or after sucb date for tbe transportation of articles or men contributing to tbe prosecution of tbe present war, there shall be allowed a reasonable deduction for tbe amortization of sucb part of the cost of such facilities or vessels as bad been borne by the taxpayer, but not again including any amount otherwise allowed under this title or previous Acts of Congress as a deduction in computing net income.
The respondent contends that the petitioner is not entitled to a deduction for amortization as it was not engaged in the production of articles contributing to the prosecution of the war. We do not agree with this contention. The building itself was constructed and used in connection with the production of articles contributing to the prosecution of the war. See United States v. Corona Coal Co., 23 Fed. (2d) 673. in which the Circuit Court of Appeals, Fifth Circuit, held that a coal company was entitled to a deduction for amortization of cost of opening shafts in its coal mines. The court in that case stated:
*' * ⅜ It is also clear that, in allowing a deduction as to “ other facilities,” it was not intended to restrict tbe meaning of “ facilities ” by tbe preceding-words, “ buildings, machinery, equipment,” but rather to enlarge it to take in anything and everything contributing to tbe general result of winning tbe war.
Respondent cites Moore Investment Co., 2 B. T. A. 579, in which we held that the amortization section does not provide relief for taxpayers who, for investment purposes, constructed or acquired buildings or equipment for the purpose of renting or leasing the same to others who were engaged in the business of manufacturing or producing articles contributing to the prosecution of the war. That case is distinguishable because in the instant case the petitioner was renting directly to the Government. Petitioner did not build this warehouse for investment purposes.
In John Polachek, 3 B. T. A. 1051, we held that the deduction for amortization of war facilities is to be spread only over what may be designated as the amortization period, and this period is determined by the time when the taxpayer abandoned the facilities or ceased producing articles contributing to the prosecution of the war. See, also, United States Refractories Corporation, 9 B. T. A. 671, in which we stated:
It did not appear in tbe record of the case that petitioner’s war-time production continued beyond December 31, 1918, and that date is accordingly fixed as tbe termination of tbe amortization period. Tbe depreciation for amortization will be confined to tbe 1918 income.
After a careful consideration of all the evidence in the case we have found as a fact that the value of the building in June, 1918, was not in excess of $62,000. The petitioner is, therefore, entitled to a de *233 duction for amortization in the amount of the difference between this figure and the cost, a deduction of $22,750.31.
Petitioner contends that the amount of $10,000 received from the Government in 1921 operated to reduce the amortization allowance to which it was entitled, that petitioner improperly included this amount in income in 1921 and that to rectify this error we must allow $10,000 of the amortization allowance as a deduction in 1921.
As far as the evidence shows this settlement of $10,000 was not paid by the Government as a part of the cost of war facilities, but was compensation for loss of profit on the contract. In this connection see G. M. Standifer Construction Corporation, 4 B. T. A. 525. It follows that the $10,000 was income to the petitioner in the year in which it was received, 1921. Since it was not income during the amortization period the amortization deduction may not be applied against it.
(4) From all the evidence we have found as a fact that the March 1, 1913, value of the land in question was $10,032, and the gain or loss sustained upon the subsequent sale of this property by petitioner should be based upon that figure.
(5) Section 326 (a) of the Revenue Act of 1918 provides:
That as used in this title the term “ invested capital ” for any year means (except as provided in subdivision (b) and (c) of this section) :
1. Actual cash bona fide paid in for stock or shares.
The evidence shows that when the Simcoe Realty Co. was organized in 1905 the full amount of its authorized capital stock, $250,000 par value, was issued for $250,000 cash. This amount should be included in the invested capital of the Simcoe Realty Co.
(6) Section 326 of the Revenue Act of 1918 provides:
(a) That as used in this title the term “invested capital” for any year means (except as provided in subdivisions (b) and (c) of this section) :
1. Actual cash bona fide paid in for stock or shares;
2. Actual cash value of tangible property, other than cash, bona fide paid in for stock or shares, at the time of such payment, but in no case to exceed the par value of the original stock or shares specifically issued therefor, unless the actual cash'value of such tangible property at the time paid in is shown to the satisfaction of the Commissioner to have been clearly and substantially in excess of such par value, in which case such excess shall be treated as paid-in surplus * * *.
The evidence discloses that the Kansas City Leasehold & Improvement Co. was organized under the laws of the State of Missouri on April 1, 1909, with authorized capital of $100,000. At that time section 3339 of the Statutes of Missouri, 1909, was in effect, which provided as follows:
*234 * * * Any three or more persons who shall have associated themselves, by articles of agreement, in writing, as provided by law, for any of the purposes included under section 3346, may be incorporated under any name or title designating such business. The articles of agreement shall set out: First, the corporate name of the proposed corporation which shall not be the name of any corporation heretofore incorporated in this state for similar purposes, or an imitation of such name; second, the name of the city or town and county in which the corporation is to be located; third, the amount of the capital stock of the corporation, the number of shares into which it is divided and the par value thereof, that the same has been bona fide subscribed, and one-half thereof actually paid up in lawful money of the United States, and is in the custody of the persons named as the first board of directors or managers * * *.
It will be noted that the law required that one-half of the authorized capital stock be paid up in lawful money of the United States. Little evidence has been introduced as to the details of the stock subscription, but, in the- absence of evidence to the contrary, we must assume that the stock was subscribed in the manner provided by law. See Washington Post Co., 10 B. T. A. 1077. Wo, therefore, hold that $50,000 in cash was paid in to the .corporation at organization. However, further than this we may not presume. Since the respondent has already allowed invested capital for the year 1918 in a greater amount than $50,000, his holding will not be disturbed.
(7) The next question deals with the depreciation of this leasehold. The respondent admits that the petitioner is entitled to amortize the cost of $72,944.01 of the lease over the remainder of its life from March 1, 1913, and the sole question for our determination is the value to be used for depreciation purposes.
We have already found that its value at March 1, 1913, was $140,000 and the depreciation should be allowed upon this basis. See Julius W. Deutsch, 2 B. T. A. 729, Cuyahoga Co., 3 B. T. A. 401, and Kaufman-Straus Co. v. Lucas, 12 Fed. (2d) 774.
(8) The parties have entered into a stipulation with regard to the depletion sustained b3^ the Ontario Realty Co. on clay lands as set forth in our findings of fact, and the amounts shown therein representing depletion will be allowed as deductions in the recomputation.
(9), (10), (11) The facts material to a decision on these findings have been stipulated between the parties as set forth in our findings of fact, and the depreciation sustained should be computed in conformity therewith.
Reviewed by the Board.

Judgment will be entered under Bule 50.