GLENN A. NOBLE AND IVA LEE NOBLE, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4276–76.     Filed September 13, 1978.

*Richard H. Frank, Jr.,* for the petitioners.
*Wm. Robert Pope, Jr.,* for the respondent.

HALL, *Judge:* Respondent determined a deficiency of $2,620.69 in petitioners' income tax for 1973. Due to concessions by both parties, the sole issue for decision is the tax treatment of a sewer tap fee paid by petitioners to the City of Brentwood, Tenn., in 1973. Specifically, the questions presented are:

(1) Whether petitioners' sewer tap fee paid to the City of Brentwood is a nondeductible tax for local improvements within the meaning of section 164(c)(1);[1]

---

[1]All statutory references are to the Internal Revenue Code of 1954, as in effect during the year is issue.

(2) Whether petitioners' sewer tap fee is an ordinary and necessary business expense, or a capital expense; and

(3) Whether petitioners' sewer tap fee can be depreciated under section 167.

## FINDINGS OF FACT

Most of the facts have been stipulated by the parties.

At the time they filed their petition, Glenn A. and Iva Lee Noble were residents of Brentwood, Tenn. Iva Lee Noble is a party only by virtue of having filed a joint return with her husband. When we hereafter refer to petitioner, we will be referring to Glenn.

Petitioner owned and operated the Travelers Rest Motel in Brentwood, Tenn., during the year in issue. He also owned a market and a restaurant in Brentwood, both of which were rented to others during 1973.

Prior to 1973, petitioner maintained his own sewage treatment plant for the motel, restaurant, and market. In 1973 he abandoned his private sewage treatment plant and began using Brentwood's new sewer system. A city ordinance required him to connect his motel, restaurant, and market properties to Brentwood's sewer system, as a condition to his continued use of the properties, or be subject to a penalty of $50 per violation (with each day constituting a separate violation).

Petitioner was required to pay a monthly service charge for use of Brentwood's sewer system. In addition to the monthly service charge, petitioner was also required to pay an initial "tap fee" to Brentwood. The tap fee gave the property owner the indefinite right to use the sewer system (subject to the monthly charge). This tap fee was established by a municipal ordinance, and the fee varied with the type of user. The purpose of the sewer tap fee was to pay the cost of expanding the sewage treatment plant. The fee was based on the estimated use of the system by each new user. For example, the tap fee for a residence (based on 350 gallons per day) was $500, while the tap fee for businesses was $1.43 per gallon of estimated usage per day. During 1973, petitioner reached an agreement with the then

city manager of Brentwood that he would pay a $6,000 tap fee for all three properties.[2]

The sewage system was constructed with the proceeds of loans obtained from the State of Tennessee. Sewer tap fees totaling $618,430 had been collected by June 30, 1976. Of this amount, $553,646 was placed by Brentwood in certificates of deposit. Brentwood presently is considering a bond issue to pay off the indebtedness (totaling approximately $1.9 million); the proceeds of such a bond issue and the certificates of deposit would be used to retire this outstanding obligation. In the meantime, the interest earned on the certificates of deposit has been deposited into the sewer system's operating account to defray the carrying charges of Brentwood's long-term indebtedness.

On his return for 1973, petitioner deducted $2,750 of the $6,000 tap fee as an ordinary and necessary business expense of his motel. Of the remainder, petitioner allocated $2,750 of the tap fee to the restaurant and $500 to the market. These latter amounts were capitalized and depreciated by petitioner on his return.

In the statutory notice, respondent determined that the $6,000 tap fee was a capital expenditure with an indeterminate life.[3]

## OPINION

The sole issue for decision is the tax treatment of a sewer tap fee of $6,000 paid by petitioner, pursuant to a municipal ordinance, to the City of Brentwood in 1973.

Petitioner owned and operated a motel in Brentwood, and he also owned a market and restaurant which were rented to others during 1973. Prior to 1973, he maintained his own private sewage treatment plant for the motel, restaurant, and market. In 1973 he was forced by Brentwood to abandon using this facility. A municipal ordinance required, instead, that petitioner connect his properties to Brentwood's sewer system or be subject to a penalty of $50 per day.

For his use of Brentwood's sewer system, petitioner was

---

[2]Subsequently Brentwood sued petitioner for the additional sum of $4,903.75. This amount was the difference between the tap fee paid by petitioner and the amount required pursuant to the municipal ordinance. As the result of the lawsuit, petitioner was required to pay an additional tap fee of $4,903.75 in 1976. This additional tap fee is not involved in the deficiency before this Court.

[3]To connect his business properties to Brentwood's sewer system, petitioner installed piping from the properties to the system in 1973. Respondent allowed petitioner a depreciation deduction for this piping.

charged a monthly service charge. In addition, he was also required to pay an initial "tap fee" of $6,000 to Brentwood. This tap fee theoretically represented the cost of expanding the sewer system to serve petitioner. Although Brentwood has not yet spent the tap fees collected, present plans call for most of the tap fees to be used to help retire the indebtedness incurred by Brentwood for the construction of the sewer system.

Petitioner contends that the sewer tap fee he paid to Brentwood is deductible as an ordinary and necessary business expense or as an amount expended for the production of income or, in the alternative, that it represents a capitial expenditure amortizable over the useful life of the improvements on his property. Respondent, on the other hand, contends either that the tap fee is a nondeductible tax under section 164(c) or that the tap fee represents the cost of a capital improvement with an indeterminate life and, as a consequence, is not depreciable.

Section 164(c)(1) provides that no deduction is allowed for "Taxes assessed against local benefits of a kind tending to increase the value of the property assessed; but this paragraph shall not prevent the deduction of so much of such taxes as is properly allocable to maintenance or interest charges."

The statutory phrase "Taxes assessed against local benefits" means "special assessments." *Caldwell Milling Co. v. Commissioner*, 3 B.T.A. 1232, 1234 (1926). Such special assessments are characterized by the fact that they are "imposed because of and [are] measured by some benefit inuring directly to the property against which the assessment is levied." Sec. 1.164–4(a), Income Tax Regs. They bear the further characteristic that "the property subject to the tax is limited to the property benefited." Sec. 1.164–4(a), Income Tax Regs.

The sewer tap fee assessed by Brentwood was directly related to the benefit to petitioner's property in that it made available to the property use of the city's sewer system. The fee was based on the estimated capital cost of expanding the system to accommodate the use by each new user. For example, the tap fee for businesses was based on $1.43 per gallon of estimated daily usage. Petitioner's property attained specific benefit from the sewer system separate and apart from any other benefit the sewer system might have for the public.

Section 164(c)(1) also requires that the assessment be for a local benefit "of a kind tending to increase the value of the

property assessed." For the purpose of section 164(c)(1), it is not necessary to prove that the petitioner's property *actually* increased in value by virtue of the benefit conferred upon the property. *Caldwell Milling Co. v. Commissioner, supra.* The evidence in this case does not disclose whether the value was enhanced by the new sewer connection. Petitioners, on whom the burden of proof rests, have not demonstrated the contrary. In any event, a city's sewer connection is a benefit "of a kind tending to increase the value" which is all the statute requires.

Section 164(c)(1) does not prevent the deduction of a tax assessed for maintenance or interest charges. *Harwell v. Commissioner,* 170 F.2d 517 (10th Cir. 1948); *Lee Wilson & Co. v. Commissioner,* 25 B.T.A. 840 (1932); *Little v. Commissioner,* 21 B.T.A. 911 (1930). The burden is on petitioner to show the amounts assessed for maintenance and interest charges. Sec. 1.164–4(b)(1), Income Tax Regs. The tap fees collected from petitioner and other subscribers to the municipal sewer system have for the most part been held in certificates of deposit. The city intends to apply the certificates of deposit to the existing indebtedness for the construction of the sewer system. Although the interest earned by the certificates of deposit has been applied to the carrying charges on the long-term indebtedness, none of the amount originally contributed appears to have been applied to either interest or maintenance charges of the sewer treatment facility. Petitioner has failed to carry his burden of showing that any part of the assessment was for maintenance or interest.

Therefore, we conclude that the sewer tap fee is not deductible under section 164 as a tax. We must next determine whether it is deductible under any other provision of the Internal Revenue Code. We do not regard as dispositive the conclusory statement in *Belfast Investment Co. v. Commissioner,* 17 B.T.A 213, 231 (1929), to the effect that a special assessment which cannot be deducted as a tax cannot be deducted "under any theory," and we do not understand that respondent takes that broad position in this case. That opinion does not indicate that the allowability of the recovery of the special assessment through depreciation deductions was either argued or considered. Indeed, in Rev. Rul. 73–188, 1973–1 C.B. 62, the Commissioner ruled that property owners were entitled to depreciate a special assessment by a city against their properties for their

share of the expense of converting a downtown street into an enclosed mall even though such assessment was not deductible either as a tax because of section 164(c)(1) or as a business expense under section 162.

Petitioner's primary contention is that the sewer tap fee paid to Brentwood is deductible as an ordinary and necessary business expense or as an amount expended for the production of income. Secs. 162 and 212. Respondent does not deny that payment of the sewer tap fee was necessary. He contends, instead, that it was not an ordinary expense as required by sections 162 and 212, but was a nondeductible capital expenditure. See sec. 263.

With a payment of the one-time sewer tap fee, petitioner acquired a valuable improvement to his land, namely, access to the city's sewer system. This improvement is of long duration (i.e., more than 1 year). In addition, petitioner paid a monthly service charge for use of the system. The monthly service charge is an ordinary and necessary *expense;* the sewer tap fee is a *capital* expenditure which benefits the land as well as the businesses on the land over more than 1 year. See secs. 1.263(a)–1(a)(1) and 1.263(a)–2, Income Tax Regs. See also *Teitelbaum v. Commissioner*, 294 F.2d 541, 544 (7th Cir. 1961); *Woolrich Woolen Mills v. United States*, 289 F.2d 444 (3d Cir. 1961). We agree with respondent that the sewer tap fee is a capital expenditure.

The next question is whether petitioner can depreciate this capital cost under section 167. Petitioner contends that he is entitled to amortize the sewer tap fee *over the life of the improvements on his land.* Respondent asserts that the benefits from the sewer tap fee will *always be available* to the land and are indeterminate and therefore nondepreciable. We disagree with both parties. The fee was paid to hook up to Brentwood's new sewer system. When that sewer system must be replaced, and/or the pipes carrying the sewage to the sewer plant must be replaced, petitioner again will presumably be subject to a special assessment to pay for a replacement plant and/or pipes. If not (and even if the next plant is financed in some other way), at the least, the value of petitioner's contribution to the capital cost of the present system will have been exhausted. The benefits (use of the new plant) obtained by payment of the sewer tap fee therefore have a life coextensive with the life of the system.

Other cases have the concluded that the life of an intangible right may have the same life as the tangible asset to which the right pertains. In *Wells-Lee v. Commissioner,* 360 F.2d 665 (1966), the Eighth Circuit held that staff fees paid by osteopathic physicians to secure hospital facilities where they could bring and treat patients were amortizable over the life of the hospital. In *Badger Pipe Line Co. v. United States,* 401 F.2d 799 (1968), the Court of Claims held that a pipeline company was entitled to amortize a pipeline right-of-way (easement) over the life of the pipeline. Accord, *Texas-New Mexico Pipe Line Co. v. United States,* 401 F.2d 796 (Ct. Cl. 1968). See also *Northern National Gas Co. v. O'Malley,* 277 F.2d 128 (8th Cir. 1960).

While we conclude that the sewer tap fee is amortizable over the life of the sewer system, we have no proof of what that life may be. Under the circumstances, we look to Rev. Proc. 72–10, 1972–1 C.B. 721, for a class life for this sewer system which was put into service before March 21, 1977 (the effective date for Rev. Proc. 72–10 as opposed to Rev. Proc. 77–10, 1977–1 C.B. 548, applicable to years after such date). Sewers fall under asset guideline class 00.3, land improvements, having a 20-year asset guideline period. The sewage treatment plant appears most akin to asset guideline class 49.3, water utilities (including assets used in the gathering, treatment, and commercial distribution of water) having an asset guideline of 50 years. Under all the circumstances, we hold that the tap fee to use the Brentwood sewer system is amortizable over a period of 50 years.

*Decision will be entered under Rule 155.*