ESTATE OF WALTER F. KLOSTERMAN, DECEASED, KENT KLOSTERMAN AND ALAN KLOSTERMAN, PERSONAL REPRESENTATIVES, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 27652–89.     Filed September 10, 1992.

*Donald J. Chisholm,* for petitioner.
*Christopher D. Hatfield,* for respondent.

OPINION

RAUM, *Judge:* The Commissioner determined a deficiency in petitioner's estate tax in the amount of $18,015. At the time the petition in this case was filed, petitioner's personal representatives resided in the State of Idaho. The case was submitted on the basis of a stipulation of facts and exhibits pursuant to our Rule 122.[1] As a result of concessions by petitioner, the main issue remaining for our decision involves the valuation, pursuant to section 2032A(e)(7)(A), of certain farmland owned by Walter F. Klosterman (decedent) at the time of his death. In addition, petitioner has asked us to decide whether it is entitled to recover litigation costs pursuant to section 7430.

On the date of his death, February 17, 1986, decedent owned 369 acres of agricultural land in Idaho. There is insufficient rainfall to allow any of these lands to be farmed without irrigation. Decedent's farms are all located within the confines of either the Minidoka Irrigation District (Minidoka) or the A&B Irrigation District (A&B). Both Minidoka and A&B are quasi-municipal corporations formed and existing under title 43, chapters 1 through 24, of the Idaho Code. They were formed to assume operation of irrigation projects of the Bureau of Reclamation of the U.S. Department of the Interior. The Minidoka Irrigation District was formed in 1905 and the A&B Irrigation District was formed in 1966. There is no other source of irrigation water

---

[1] All Rule references are to the Tax Court Rules of Practice and Procedure. Except as otherwise indicated, all section references are to the Internal Revenue Code as in effect at the time of decedent's death.

available for any of decedent's lands besides Minidoka and A&B.

The irrigation districts have the power to levy and collect assessments for operation and maintenance under chapter 7 of title 43 of the Idaho Code, including the issuance of tax deeds and the sale of property under tax deed to collect assessments. The districts levy annual operation and maintenance charges (sometimes referred to as O&M charges) on all irrigable land within their boundaries whether or not any water is used on the land during the irrigating season. Nonirrigable land within the irrigation district is not subject to the O&M charges. The parties have stipulated that "The operation and maintenance charges are separate from construction charges which are to repay the cost of construction of the systems. Construction charges are not in issue in this case."

The irrigation district charges are assessed on a per-acre basis and are not based on the amount of water consumed. A basic water right entitles the property owner to a fixed volume of water per acre, whether or not the water is used. In the A&B district, excess water charges are assessed if the normal allotment is exceeded, but the parties have stipulated that "that matter is not in issue in this case."

Any person owning land within the Minidoka or A&B districts may file a petition requesting the exclusion of the land owned by that person from the irrigation district. See Idaho Code sec. 43-1101 (1990). The parties have stipulated that pursuant to Idaho Code sec. 43-1102, there are four grounds for being excluded from an irrigation district:[2]

1. The lands are too high to be watered without plumbing [sic] by the owners;

2. The owners of the lands have installed a good and sufficient water system independent of the water system of such irrigation district for the irrigation of the lands because the district does not own a sufficient water right to furnish an adequate water supply for those lands;

3. The lands in their present condition are not agricultural lands; or

4. Prior to acquisition of the land by the petitioner owners, and without their knowledge or consent, the ditch or other transmission facility extending from the delivery point to the district to the lands has been rendered

---

[2] The stipulated provisions quoted above differ somewhat from the version of sec. 43-1102 of the current Idaho Code and also from the version of these provisions, then designated sec. 43-1101A, in effect at the time of decedent's death, in 1986. However, the differences do not appear to be of any consequence in this case.

permanently incapable of carrying water to the lands, but this ground for exclusion shall only apply to parcels less than five (5) acres in size.

Decedent's 369 acres did not qualify for exclusion from either irrigation district under any of those grounds on the date of his death. He was required to pay annual O&M charges for all 369 irrigable acres of land to the irrigation district in which the respective portion of the 369 acres was located. These annual charges averaged $23 per acre for all 369 irrigable acres of land.

The Minidoka Irrigation District levies water assessments at the end of the irrigation season. The assessments are due and payable by March 1 of the following year. If the assessments are not paid by the due date, water will not be supplied for the coming irrigation season. The A&B Irrigation District collects annual water assessments in advance before water will be provided for the irrigation season.

Landowners in the Minidoka Irrigation District need to assure themselves that the irrigation charges will be paid when they rent their farms on a cash rental basis. Therefore, they include the amount of the operation and maintenance assessment in the cash rent charged to the tenant, and pay this assessment to the Minidoka Irrigation District. By tradition, this method of including the water charges in cash rental has been carried over in the A&B Irrigation District. If the landowner did not pay the irrigation district O&M charges, but instead required the tenant to pay them, the cash rental figures would be reduced by the amount of the irrigation district O&M charges. The average annual cash rental value of decedent's 369 acres of land, including the portion of the rent allocable to the irrigation district O&M charges, was $36,430, or $98.73 per acre.

On its estate tax return, petitioner's personal representatives elected to value the 369 acres of land described above pursuant to section 2032A. Congress enacted section 2032A in order to encourage the continued use of property for farming and other small business purposes.[3] The House Ways and Means Committee stated in connection with the enactment of section 2032A that:

---

[3] Sec. 2032A entered the Internal Revenue Code through the Tax Reform Act of 1976, Pub. L. 94-455, sec. 2003(a), 90 Stat. 1856-1861.

Valuation on the basis of highest and best use, rather than actual use, may result in the imposition of substantially higher estate taxes. In some cases, the greater estate tax burden makes continuation of farming * * * not feasible because the income potential from these activities is insufficient to service extended tax payments or loans obtained to pay the tax. Thus, the heirs may be forced to sell the land for development purposes. [H. Rept. 94-1380 (1976), 1976-3 C.B. (Part 3) 735, 756.]

To prevent these events from occurring, Congress allowed property that was included in the decedent's estate and devoted to farming to be valued on the basis of the property's value as a farm, rather than its fair market value as determined on the basis of its highest and best use. *Id.* at 756.

In general, the value of a farm for farming purposes is determined under section 2032A(e)(7)(A),[4] and it is undisputed that the value of the 369 acres here in issue is to be determined pursuant to that provision. Section 2032A(e)(7)(A) provides as follows:

(7) METHOD OF VALUING FARMS.—

(A) IN GENERAL.— Except as provided in subparagraph (B), the value of a farm for farming purposes shall be determined by dividing—

(i) the excess of the average annual gross cash rental for comparable land used for farming purposes and located in the locality of such farm over the average annual State and local real estate taxes for such comparable land, by

(ii) the average annual effective interest rate for all new Federal Land Bank loans.

For purposes of the preceding sentence, each average annual computation shall be made on the basis of the 5 most recent calendar years ending before the date of the decedent's death.

Thus, in order to compute the value of a farm for purposes of section 2032A, three steps are required. First, a computation is made of the "average annual gross cash rental for comparable land used for farming purposes and located in the locality of such farm". Second, from this amount is subtracted the "average annual State and local real estate taxes for such comparable land". Third, the result of the subtraction described in the second step is divided by the "average

---

[4] Petitioner's executors could have elected under sec. 2032A(e)(7)(C)(ii) to value the 369 acres under sec. 2032A(e)(8), which values real property on the basis of a number of complex and relatively subjective factors rather than on the basis of the relatively objective method set forth in sec. 2032A(e)(7)(A). However, no such election was made.

annual effective interest rate for all new Federal Land Bank loans."[5] Sec. 2032A(e)(7)(A).

The dispute between the parties turns on the proper treatment of the operation and maintenance assessments for purposes of section 2032A(e)(7)(A). The Commissioner determined in effect (1) that the amounts of the O&M charges collected by the landowner from a lessee[6] were includable as part of the gross rent in the minuend of section 2032A(e)(7)(A)(i), and (2) that such charges could not then be included in the subtrahend of that provision, which consists of "State and local real estate taxes."[7] The inclusion of the operation and maintenance charges in the average cash rental without allowing such charges to be deducted from such rentals as State or local taxes increases the value of the property under section 2032A(e)(7)(A) by $187.76 per acre (i.e., $23 ÷ .1225, the applicable Federal Land Bank interest rate). Petitioner contends in substance that either (1) the O&M charges must be excluded from the "average annual gross cash rental" in the numerator of the fraction of section 2032A(e)(7)(A), or (2) in the alternative, such charges must be treated as State and local real estate taxes and subtracted from the annual cash rentals in that numerator before the average rentals as thus reduced are capitalized by use of the Federal Land Bank rate in the denominator of section 2032A(e)(7)(A). We uphold the determination of the Commissioner.

1. *Inclusion of the O&M charges as part of the "average annual gross cash rental for comparable land" under section 2032A(e)(7)(A)(i).* The plain language of section 2032A(e)(7)(A)(i) supports the Commissioner's determination that amounts collected from the renter in respect of the operation and maintenance charges assessed against the property must be included in the "average annual gross cash rental". Section 2032A(e)(7)(A)(i) uses the term "gross" in describing the cash rentals to be capitalized. The use of the word "gross"

---

[5] The parties have stipulated that the applicable Federal Land Bank rate was .1225.

[6] The parties have treated the operation and maintenance assessments assessed against the land comparable to decedent's as equal to the $23 O&M charges assessed against decedent's land.

[7] The parties have stipulated that State and local real property taxes for comparable land were $5.12 per acre, not including any irrigation district assessments. The Commissioner allowed a deduction from the average annual cash rental in respect of these taxes pursuant to sec. 2032(e)(7)(A)(i), and such taxes form no part of the controversy between the parties.

strongly suggests that, as a general rule, Congress did not intend any expenses to be deducted from the total amount of cash rentals received by the landowner. Furthermore, section 2032A(e)(7)(A)(i) allows the deduction of but a sole type of expense in computing the annual gross cash rental, namely, "State and local real estate taxes". The limited specific allowance of a deduction for one particular type of expense further indicates the intent of Congress not to allow the "gross" rentals to be further reduced by any other type of expense.

The pertinent Treasury regulation also supports the Commissioner's interpretation of the statute here. Section 20.2032A-4(b)(1), Estate Tax Regs., states that the "Gross cash rental is the total amount of cash received for the use of actual tracts of comparable farm real property * * * . This amount is not diminished by the amount of any expenses or liabilities associated with the farm operation or the lease." This regulation clearly requires the amounts paid by the tenant to the landowner in respect of the operation and maintenance assessments paid by the landowner to be included in the annual gross cash rental. In so requiring, the regulation harmonizes perfectly with the obvious intent of the statute.

Petitioner asks us to hold that section 20.2032A-4(b)(1), Estate Tax Regs., is invalid. It argues in effect that the operation and maintenance assessments are collected by landlords in exchange for water rather than for the use of the land itself. Petitioner asserts further that "Section 2032A(e)(7)(A) does not authorize the Commissioner to include revenues attributable to factors other than the land in determining the capitalized value of the net income stream generated by the land". We reject petitioner's contentions that it is the "net income stream" which is to be capitalized and that the Commissioner has included in the gross cash rentals any "revenues attributable to factors other than the land".

As we have shown above, the plain language of both section 2032A(e)(7)(A) and the regulation construing that section make clear that Congress generally intended the *gross* cash rental of the land rather than the "net income stream" to be capitalized. Moreover, this capitalization was to occur after the subtraction from such gross cash rental of only the State and local real estate taxes, and no other expenses. Conceivably, an exception to this rule might be appropriate

in the case of a contract which provided not only for the use of land but also for the use or acquisition by the tenant of personal property, or for the provision of services to the tenant by the landowner. In such a case, the estate might be allowed to exclude from the gross cash rentals any amounts established by it to be attributable to the purchase of personal property or services rather than to the use of the land. See sec. 20.2032A-4(b)(2)(v), Estate Tax Regs. However, on the record before us, the payment by the tenant of amounts corresponding to the operation and maintenance charges assessed against the property comparable to petitioner's did not relate to the purchase of any personal property from the respective landowner or to the rendition of any services by him.

The parties have stipulated that landowners in both the Minidoka and A&B Irrigation Districts included the amount of the O&M charges assessed against their land in the cash rent charged to tenants. The record does not indicate that there existed any circumstances under which a prospective tenant would be allowed to rent land in either of the irrigation districts without agreeing to compensate the landowner for the operation and maintenance charges levied against that land, even if the prospective tenant agreed not to use any water at all. Such charges were plainly intended to compensate the landowner for an expense he bore as a result of his ownership of the land, and are therefore properly attributable to use of the land by the tenant rather than to the landowner's sale of goods or rendition of services. We conclude that the operation and maintenance charges included in the cash rent may not be excluded from the computation of the annual gross cash rental of the property. Accordingly, we reject petitioner's attack on the regulation, which sets forth a position that we would reach even in the absence of the regulation. And in any event, a regulation must be sustained unless it is unreasonable and plainly inconsistent with the statute. See, e.g., *Bingler v. Johnson,* 394 U.S. 741, 750 (1969).

2. *The O&M charges do not constitute "State and local real estate taxes" to be subtracted from the "annual gross cash rental" within the meaning of section 2032A(e)(7)(A)(i).* We now turn to petitioner's alternative contention that the operation and maintenance assessments are "State and local real

estate taxes", which may be subtracted from the "annual gross cash rental". Sec. 2032A(e)(7)(A)(i). The phrase "State and local real estate taxes" is not defined in section 2032A, but section 20.2032A-4(c), Estate Tax Regs., provides that "state and local taxes are taxes which are assessed by a state or local government and which are allowable deductions under section 164." Section 164(a) states the general rule that "Except as otherwise provided in this section," a deduction is allowable for "(1) State and local, and foreign, real property taxes."

The focal point of the dispute between the parties regarding the allowability of a deduction under the general rule of section 164(a) for the operation and maintenance assessments is section 164(c)(1). Section 164(c)(1) denies deductions for "Taxes assessed against local benefits of a kind tending to increase the value of the property assessed; but this paragraph shall not prevent the deduction of so much of such taxes as is properly allocable to maintenance or interest charges." We hold that the operation and maintenance assessments were "assessed against local benefits" and that the taxpayer has not proven that those local benefits were not "of a kind tending to increase the value of the property assessed". Furthermore, we are satisfied that the taxpayer has not carried its burden of showing what portion, *if any,* of the operation and maintenance charges was allocable to maintenance and interest charges. See *Noble v. Commissioner,* 70 T.C. 916, 920 (1978). Section 164(c)(1) therefore prevents the operation and maintenance charges from qualifying as "State and local real estate taxes" within the meaning of section 2032A(e)(7)(A)(i).

The history of section 164(c)(1) may be instructive. Prior to the enactment of the Revenue Act of 1918, the income tax law denied a deduction for all taxes that were "assessed against local benefits". See, e.g., Revenue Act of 1916, ch. 463, secs. 5, 12, 39 Stat. 759, 769. Beginning with the Revenue Act of 1918, however, a deduction was denied only in respect of taxes that were "assessed against local benefits of a kind tending to increase the value of the property assessed". Revenue Act of 1918, ch. 18, secs. 214, 234, 40 Stat. 1067, 1078. In describing the effect of the amended provisions, the conference committee stated that they authorized a deduction for "taxes assessed against local benefits

when such benefits are not 'of a kind tending to increase the value of the property assessed'". H. Conf. Rept. 1037, 65th Cong., 3d Sess. 49, 56 (1919). Thus, two requirements had to be satisfied in order for the predecessor of section 164(c)(1) to deny a deduction for a real estate tax, and these same two requirements appear in present-day section 164(c)(1). First, the tax must be assessed against local benefits. Second, if the tax is assessed against local benefits, the benefits must be of a kind that tend to increase the value of the property against which such tax is assessed. Sec. 164(c)(1); see also *Noble v. Commissioner,* 70 T.C. 916, 919-920 (1978) (both of these aspects of section 164(c)(1) separately analyzed).

*First.* The first requirement of section 164(c)(1) is satisfied here; the operation and maintenance charges constitute a tax that is "assessed against local benefits". The applicable Treasury regulation states: "A tax is considered assessed against local benefits when the property subject to the tax is limited to property benefited." Sec. 1.164-4(a), Income Tax Regs. An analysis of the operation and maintenance assessments imposed by A&B and Minidoka indicates that such assessments were imposed only upon property that was benefited by the expenditures deriving from the assessments. It has been held that an irrigation district is primarily "brought into existence and maintained for the purpose of ministering to the pecuniary benefit of private persons holding irrigable lands within its territorial limits." *Noon v. Gem Irrigation District,* 205 F. 402, 404 (D. Idaho 1913). Additionally, the parties have stipulated that "The O&M charges are levied against all *irrigable* land within the boundaries of the irrigation district * * * . Non-irrigable land within the irrigation district is not subject to the O&M charges." (Emphasis added.)

To be sure, the O&M charges are imposed on irrigable land within the two districts "whether or not any water is used on the land during the irrigating season." However, the nature and scope of the relevant exemptions provided by the Idaho statute are such that land was unlikely to be subject to the O&M assessments unless it could actually benefit from the water provided by Minidoka or A&B. Any landowner may petition for lands to be exempt from the operation and maintenance assessments if "The lands in their present condition are not agricultural lands". Idaho Code sec. 43-

1102(a)(3) (1990). Even if the lands are "agricultural lands", they may nevertheless be eligible for exclusion if the irrigation district does not own a sufficient water right to furnish an adequate water supply for those lands, and the owners have therefore installed a sufficient water system independent of the water system of such irrigation district. Idaho Code sec. 43-1102(a)(2). Lands may also be eligible for exclusion from an irrigation district if the lands are too high to be watered without pumping by the owners, or under certain other circumstances. Idaho Code sec. 43-1102(a)(1), (4). While there may conceivably be situations in which the O&M assessments are imposed on property that does not benefit from the irrigation services provided by Minidoka and A&B, it would appear that the overwhelming majority of the lands that were subject to the O&M assessments benefited directly and substantially from those assessments. In any event, petitioner had the burden of proof, and has not shown otherwise.

*Second.* Petitioner has also failed to carry its burden of showing that the second requirement of section 164(c)(1) is not satisfied. As stated above, in order for section 164(c)(1) to disallow a deduction for a tax assessed against local benefits, the local benefits must be "of a kind tending to increase the value of the property assessed". For purposes of determining whether this requirement is met, it is sufficient that the taxing authority that made the assessment did so on the ground that the value of the property assessed would be increased thereby, rather than on the ground that the community as a whole would benefit. Section 164(c)(1) thus does not require an actual increase in the value of the property assessed. *Caldwell Milling Co. v. Commissioner,* 3 B.T.A 1232 (1926).

Petitioner had the burden of proving that the benefits relating to the operation and maintenance charges assessed by the irrigation districts did not tend to increase the value of the property against which such charges were assessed. The record contains no evidence as to whether the operation and maintenance assessments were imposed on the theory that the value of the property against which they were imposed would increase as a result of such assessments. Nor is there any evidence as to whether the value of the property assessed actually did increase as a result of the benefits provided in respect of the operation and maintenance charges.

We therefore hold that petitioner has failed to satisfy its burden of showing that the operation and maintenance assessments did not tend to increase the value of the property against which they were assessed.

As noted above, despite the fact that taxes are "assessed against local benefits of a kind tending to increase the value of the property assessed", a deduction may nonetheless be allowable under the final clause of section 164(c)(1) with respect to "so much of such taxes as is properly allocable to maintenance or interest charges". Sec. 164(c)(1). While it is possible that the "operation and maintenance" charges may have been allocable in part to "maintenance", there is no evidence whatsoever to show even approximately the proportion of such charges that were attributable to "maintenance" as opposed to "operation". Nor is it sufficient that the parties have stipulated that "The operation and maintenance charges are separate and distinct from construction charges which are to repay the cost of construction of the systems. Even if the O&M charges were not assessed for construction, they could still have been assessed in order to provide for the purchase of water, the payment of the salaries of administrative personnel not engaged in maintenance work, or any number of other purposes not properly considered "maintenance or interest". We hold that petitioner has not met its burden of proving that a portion of the taxes was "properly allocable to maintenance or interest". Sec. 164(c)(1).

Although the O&M charges may be deductible as business expenses under section 162, they are not deductible here as taxes under section 164. Therefore, these charges may not be subtracted from the "annual gross cash rental" in the numerator of the fraction described in section 2032A(e)(7)(A). The result that we reach is compatible with the result in Rev. Rul. 67-337, 1967-2 C.B. 92.

---

Lastly, we deal with petitioner's contention on brief that it is entitled to attorney's fees and costs under section 7430. Rule 231(a)(2), set forth in the margin,[8] provides that such

---

[8] RULE 231(a) Time and Manner of Claim:

(2) *Unagreed Cases:* Where a party has substantially prevailed and wished to claim reasonable litigation or administrative costs, and there is no agreement as to that party's entitlement to such cost, a claim shall be made by motion filed—

a claim shall not be made until one of three events has occurred. None of the three events has yet occurred, and petitioner's claim is therefore premature. Moreover, all three of these events depend upon petitioner's having "substantially prevailed"—a condition explicitly set forth in the amended provisions of section 7430(c)(4)(A) applicable here,[9] and one that would not in any event be satisfied in this case in view of our holding on the merits.

*Decision will be entered under Rule 155.*

---

(A) Within 30 days after the service of a written opinion determining the issues in the case;

(B) Within 30 days after the service of the pages of the transcript that contain findings of fact or opinion stated orally pursuant to Rule 152 * * * ; or

(C) After the parties have settled all issues in the case other than litigation and administrative costs. * * *

[9] The relevant amendment was made by sec. 6239(a) of the Technical and Miscellaneous Revenue Act of 1988, Pub. L. 100-647, 102 Stat. 3745.